[995 NE2d 131, 972 NYS2d 169]

TIFFANY APPLEWHITE, an Infant, by SAMANTHA APPLEWHITE, Her Mother and Natural Guardian, et al., Respondents, v ACCUHEALTH, INC., et al., Defendants, and CITY OF NEW YORK, Appellant.

Argued January 7, 2013; reargued May 30, 2013; decided June 25, 2013

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Drake A. Colley, Fay Leoussis, Amy G. London, Margaret G. King* and *Edward F.X. Hart* of counsel), for appellant. I. The Appellate Division correctly ruled that plaintiff's claim that

emergency medical services should immediately have transported her daughter to the hospital implicated a governmental function, but erred in assuming a special duty pleading where plaintiff plainly never alleged one. (*Valdez v City of New York*, 18 NY3d 69; *McLean v City of New York*, 12 NY3d 194; *Kovit v Estate of Hallums*, 4 NY3d 499; *Pelaez v Seide*, 2 NY3d 186; *Cuffy v City of New York*, 69 NY2d 255; *Laratro v City of New York*, 8 NY3d 79; *Silver v City of New York*, 281 AD2d 233.) II. Assuming plaintiff had pleaded a special duty, the Appellate Division erred in finding that the emergency medical technicians' response to plaintiff's request that they immediately transport her daughter constituted an assurance or guarantee of safety and that plaintiff acted in justifiable reliance on that response. (*Valdez v City of New York*, 18 NY3d 69; *Cuffy v City of New York*, 69 NY2d 255; *Dinardo v City of New York*, 13 NY3d 872; *McLean v City of New York*, 12 NY3d 194; *Kircher v City of Jamestown*, 74 NY2d 251; *Silver v City of New York*, 281 AD2d 233; *Lauer v City of New York*, 95 NY2d 95; *Laratro v City of New York*, 8 NY3d 79; *Mollerson v City of New York*, 8 AD3d 70; *Clark v Town of Ticonderoga*, 291 AD2d 597, 98 NY2d 604.)

*Kramer, Dillof, Livingston & Moore*, New York City (*Matthew Gaier* and *Thomas A. Moore* of counsel), *Norman Bard* and *Murray S. Axelrod*, for respondents. I. The allegations at issue in this case involve proprietary functions of ambulance attendants rather than governmental functions of the City of New York. (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Sebastian v State of New York*, 93 NY2d 790; *Balsam v Delma Eng'g Corp.*, 90 NY2d 966; *Clinger v New York City Tr. Auth.*, 85 NY2d 957; *Schrempf v State of New York*, 66 NY2d 289; *Miller v State of New York*, 62 NY2d 506; *Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175; *Riss v City of New York*, 22 NY2d 579; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592; *Matter of Beary v City of Rye*, 44 NY2d 398.) II. This case involves misfeasance by the City of New York's emergency medical technicians to which the special duty doctrine does not apply. (*Fonville v New York City Health & Hosps. Corp.*, 300 AD2d 623; *Badillo v City of New York*, 35 AD3d 307; *Haggerty v Diamond*, 251 AD2d 455, 92 NY2d 814; *LaLonde v Hurteau*, 239 AD2d 858; *Walsh v Town of Cheektowaga*, 237 AD2d 947; *Rodriguez v City of New York*, 189 AD2d 166; *McLean v City of New York*, 12 NY3d 194; *Parvi v City of Kingston*, 41 NY2d 553; *Wolf v City of New York*, 39 NY2d 568; *Marks v Nambil Realty Co.*, 245 NY 256.) III. The Appellate Division properly found that defendants were not entitled to summary judgment on the

issue of whether there was a special duty. (*Misicki v Caradonna*, 12 NY3d 511; *Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Fischer v Zepa Consulting*, 95 NY2d 66; *Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg*, 79 NY2d 244; *Matter of Nicole V.*, 71 NY2d 112; *County of Nassau v Cuomo*, 69 NY2d 737; *Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co.*, 64 NY2d 1049; *McClelland v Mutual Life Ins. Co. of N.Y.*, 217 NY 336; *Smalls v AJI Indus., Inc.*, 10 NY3d 733; *JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373.)

*John A. Mancini*, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae. I. Abandoning the long-held standard that there can be no liability against a municipality without plaintiff demonstrating that a special duty was owed to that person would expose local governments and the state to an avalanche of litigation and potential liability, stressing municipal and state resources that are already stretched to the breaking point. (*Valdez v City of New York*, 18 NY3d 69; *Laratro v City of New York*, 8 NY3d 79; *Cuffy v City of New York*, 69 NY2d 255.) II. Judgment against defendants could have a tremendous chilling effect on other municipalities across the state that provide on-scene emergency medical services, as well as police and fire protection. III. Municipal emergency responders should not have to fear liability when exercising their professional judgment. (*Mon v City of New York*, 78 NY2d 309; *Arias v City of New York*, 22 AD3d 436.)

*Michael Jaffee*, New York City, and *Pollack Pollack Isaac & De Cicco* (*Brian J. Isaac* of counsel) for New York State Trial Lawyers Association, amicus curiae. Governmental immunity does not apply to the provision of on-the-scene medical care, which is governed by ordinary negligence principles in which special duty/relationship rules have no application. (*Valdez v City of New York*, 18 NY3d 69; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *McLean v City of New York*, 12 NY3d 194; *Dinardo v City of New York*, 13 NY3d 872; *Lauer v City of New York*, 95 NY2d 95; *Sebastian v State of New York*, 93 NY2d 790; *Schrempf v State of New York*, 66 NY2d 289; *Riss v City of New York*, 22 NY2d 579; *Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222; *Eiseman v State of New York*, 70 NY2d 175.)

### OPINION OF THE COURT

GRAFFEO, J.

When a municipality provides ambulance service by emergency medical technicians in response to a 911 call for assistance, it performs a governmental function and cannot be held

liable unless it owed a "special duty" to the injured party. Based on the specific allegations interposed in this case, plaintiffs have adequately established questions of fact on the applicability of the special duty doctrine, thereby precluding summary judgment for the municipal defendants.

## I

In 1998, plaintiff Tiffany Applewhite suffered from uveitis, an eye condition, which required the intravenous administration of a prescribed medication. After a visiting nurse injected Tiffany with the drug at her home, the 12-year-old girl experienced an episode of anaphylactic shock. When Tiffany's breathing difficulties worsened, her mother dialed 911 seeking assistance. While the nurse performed whatever emergency care that she could provide, Tiffany had a seizure followed by cardiac arrest.

Within minutes after the 911 call was placed, two emergency medical technicians (EMTs) employed by the New York City Fire Department arrived at the Applewhite apartment, having traveled in a basic life support ambulance. The EMTs had been dispatched because no advanced life support (ALS) ambulance transporting paramedics was available at the time. One EMT immediately began performing cardiopulmonary resuscitation (CPR) on Tiffany while the other called for an ALS ambulance and then retrieved equipment from the ambulance.

At some point, Tiffany's mother allegedly requested that the EMTs transport Tiffany to nearby Montefiore Hospital. The EMT continued to conduct CPR on Tiffany until paramedics from a private hospital, who arrived in an ALS ambulance, appeared at the scene. The paramedics injected Tiffany with epinephrine to counter the effects of anaphylactic shock, intubated her, administered oxygen and then transported her to Montefiore Hospital. Tiffany survived the ordeal but tragically suffered serious brain damage.

Tiffany and her mother commenced this action against the nurse, her employer (Accuhealth, Inc.), and the City of New York and its emergency medical services (EMS). Accuhealth dissolved in bankruptcy and the lawsuit against the nurse was settled. Thus, the only claims that remain outstanding are those against the municipal defendants (referred to collectively as the City).

The City moved for summary judgment, primarily contending that it was immune from liability because it did not owe a special duty to plaintiffs. In the alternative, the City maintained

that the actions of its personnel were not the proximate cause of Tiffany's injuries; rather, Tiffany's allergic reaction was the result of the drug administered to the child by the nurse. Supreme Court granted the City's motion, concluding that plaintiffs could not prove that the City owed them a special duty or that the municipal defendants were the proximate cause of the harm.

The Appellate Division reversed and reinstated the claims against the City (90 AD3d 501 [1st Dept 2011]). It determined that the City's emergency medical response was governmental in nature, but found that plaintiffs raised triable issues of fact as to whether the City had assumed a special duty to plaintiffs and whether it proximately caused their injuries. The Appellate Division certified a question to us asking if its decision was correct.

## II

When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose. If the municipality's actions fall in the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to non-governmental parties (*see Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428, 446-447 [2011], *cert denied sub nom. Ruiz v Port Auth. of New York & New Jersey*, 568 US —, 133 S Ct 133 [2012]). A government entity performs a purely proprietary role when its "activities essentially substitute for or supplement traditionally private enterprises" (*Sebastian v State of New York*, 93 NY2d 790, 793 [1999] [internal quotation marks omitted]). In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are "undertaken for the protection and safety of the public pursuant to the general police powers" (*id.* [internal quotation marks omitted]).

Because this dichotomy is easier to state than to apply in some factual scenarios, the determination categorizing the conduct of a municipality may present a close question for the courts to decide (*see Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d at 446-447; *Sebastian*, 93 NY2d at 793-794). Police and fire protection are examples of long-recognized, quintessential governmental functions (*see e.g. Valdez v City of New York*, 18 NY3d 69, 75 [2011]; *Harland Enters. v Commander Oil Corp.*, 64 NY2d 708, 709 [1984]). Additional examples include security operations at the World Trade Center (*see Matter of World Trade*

*Ctr. Bombing Litig.*, 17 NY3d at 450); oversight of juvenile delinquents (*see Sebastian*, 93 NY2d at 796); issuance of building permits or certificates of occupancy (*see Rottkamp v Young*, 15 NY2d 831, 833 [1965], *affg* 21 AD2d 373 [2d Dept 1964]; *Worth Distribs. v Latham*, 59 NY2d 231, 237 [1983]); certifying compliance with fire safety codes (*see Garrett v Holiday Inns*, 58 NY2d 253, 261-262 [1983]); teacher supervision of a public school playground (*see Bonner v City of New York*, 73 NY2d 930, 932 [1989]); boat inspections (*see Metz v State of New York*, 20 NY3d 175, 179-180 [2012]); and garbage collection (*see Nehrbas v Incorporated Vil. of Lloyd Harbor*, 2 NY2d 190, 194-195 [1957]). On the other hand, we have recognized that certain medical services delivered by the government in hospital-type settings are more akin to private, proprietary conduct (*see e.g. Schrempf v State of New York*, 66 NY2d 289 [1985]; *Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592 [1999]; *Matter of Murray v City of New York*, 30 NY2d 113 [1972]). As a general rule, the distinction is that the government will be subject to ordinary tort liability if it negligently provides "services that traditionally have been supplied by the private sector" (*Sebastian*, 93 NY2d at 795).

If it is determined that a municipality was exercising a governmental function, the next inquiry focuses on the extent to which the municipality owed a "special duty" to the injured party. The core principle is that to " 'sustain liability against a municipality, the duty breached must be more than that owed the public generally' " (*Valdez*, 18 NY3d at 75, quoting *Lauer v City of New York*, 95 NY2d 95, 100 [2000]). We have recognized that a special duty can arise in three situations: (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition (*see e.g. Metz*, 20 NY3d at 180). It is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself (*see Lauer*, 95 NY2d at 100; *see also Valdez*, 18 NY3d at 75). In situations where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity.[1]

---

**1.** Contrary to the parties' arguments, our precedent does not differentiate between misfeasance and nonfeasance, and such a distinction is irrelevant to

*(n. cont'd)*

## III

In this case, the parties dispute whether the City exercised a governmental or proprietary function when the EMTs initiated emergency care. The City asserts that the provision of 911 referrals and emergency medical service responses are within the traditional responsibilities of municipal government, similar in nature to emergency fire protection services. Plaintiffs, however, maintain that the governmental function terminated with the arrival of the EMTs at Tiffany's home and a proprietary function arose once emergency medical care was undertaken since treatment of this nature is generally offered by private parties (e.g., doctors and hospital personnel) and the City charges fees for its ambulance services. Consistent with their respective arguments, the City asserts that plaintiffs failed, as a matter of law, to establish triable issues of fact pertaining to the creation of a special relationship,[2] and plaintiffs urge that summary judgment was inappropriate because there are factual disputes to be resolved before the issue of special duty can be determined.

In *Laratro v City of New York* (8 NY3d 79 [2006]), the plaintiff sued the City for responding too slowly to a 911 call (the ambulance took 35 minutes to arrive, as opposed to the several-minute response time in this case). Our analysis began with the recognition that "[p]rotecting health and safety is one of municipal government's most important duties" (*id.* at 81) and this responsibility extends to "the duty to provide police protection, fire protection *or ambulance service*" to the general public (*id.* at 82-83 [emphasis added]). We proceeded to determine whether the plaintiff had sufficiently established the existence of a special duty—an inquiry that would have been unnecessary had we viewed the City's response to the 911 call as a proprietary function. Hence, we have previously viewed municipal emergency systems and responses to 911 calls to be within the sphere of governmental functions.

Our concurring colleagues contend that the EMTs acted in a proprietary capacity when they began to render aid, equating their conduct with medical services such as mental health care

the special duty analysis (*see generally McLean v City of New York*, 12 NY3d 194, 202 [2009]; *Schuster v City of New York*, 5 NY2d 75, 82 [1958]).

2. Although the City claims that plaintiffs were required to specifically plead the existence of a special duty in their complaint, we decline to address this issue because it was not properly raised in Supreme Court. Additionally, the City does not challenge the Appellate Division's determination that the EMTs were "acting in a ministerial capacity" (90 AD3d at 503).

(*see Schrempf v State of New York*, 66 NY2d 289 [1985]), obstetrics (*see Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592 [1999]) and surgery (*see Matter of Murray v City of New York*, 30 NY2d 113 [1972]). In those situations, however, the "governmental activities . . . displaced or supplemented traditionally private enterprises" (*Riss v City of New York*, 22 NY2d 579, 581 [1968]). Emergency medical services, in contrast, have widely been considered one of government's critical duties (*see e.g.* 1982 Ops St Comp No. 82-182; *Edwards v City of Portsmouth*, 237 Va 167, 171, 375 SE2d 747, 750 [1989]; *Ross v Consumers Power Co.*, 420 Mich 567, 654, 363 NW2d 641, 677 [1984]; *King v Williams*, 5 Ohio St 3d 137, 140, 449 NE2d 452, 455 [1983]; *Thornton v Shore*, 233 Kan 737, 742, 666 P2d 655, 659 [1983]; *McIver v Smith*, 134 NC App 583, 587, 518 SE2d 522, 525 [1999]; *Wanzer v District of Columbia*, 580 A2d 127, 131 [DC Ct App 1990]; *Ayala v City of Corpus Christi*, 507 SW2d 324, 328 [Tx Civ App 1974]; *Smith v City of Lexington*, 307 SW2d 568, 569-570 [Ky Ct App 1957]).

■ Consistent with this view and our reasoning in *Laratro* (8 NY3d 79), we believe that publicly-employed, front-line EMTs and other first responders, who routinely place their own safety and lives in peril in order to rescue others, surely fulfill a government function—certainly no less so than municipal garbage collectors and school playground supervisors (*see Nehrbas*, 2 NY2d at 194-195; *Bonner*, 73 NY2d at 932; *see also Edwards v City of Portsmouth*, 237 Va at 171, 375 SE2d at 750)—because they exist "for the protection and safety of the public" and not as a "substitute for . . . private enterprises" (*Sebastian*, 93 NY2d at 793 [internal quotation marks omitted]). The facts of this case reinforce this view since the purportedly negligent EMTs were employees of the City's fire department using City resources in an effort to fulfill the City's obligation to answer an emergency 911 dispatch and attempt to save Tiffany Applewhite's life. And contrary to the belief expressed in the concurring opinions, the fact that private entities operate ambulance services in New York City is not determinative because those companies provide supplemental support for a critical governmental duty rather than vice versa (*see Edwards v City of Portsmouth*, 237 Va at 171-172, 375 SE2d at 750 ["the test cannot be whether the same thing is done by private entities, but rather whether, in providing such services, the governmental entity is exercising the powers and duties of

government conferred by law for the general benefit and well-being of its citizens"]).[3] Nor does the City's policy of charging a fee for its ambulance service (*see* 3 RCNY 4900-02 [b]) alter the analysis because it is designed to defray the cost of maintaining this essential component of the City's emergency response system, not to create a profit for the taxpayers (*see* General Municipal Law § 122-b [2]; 2005 Ops St Comp No. 05-8; *see also Wanzer*, 580 A2d at 131; *Edwards*, 237 Va at 172, 375 SE2d at 750; *Smyser v City of Peoria*, 215 Ariz 428, 435-436, 160 P3d 1186, 1193-1194 [Ct App 2007]; *McIver v Smith*, 134 NC App at 587, 518 SE2d at 526).

Moreover, and unlike the types of medical providers identified by the concurrences, the EMTs employed by the New York City Fire Department (FDNY) and deployed via the 911 system receive training in basic life support techniques and their range of approved emergency services is limited by law (*see* Public Health Law § 3001 [6] [defining the term "emergency medical technician"]; 10 NYCRR 800.6 [c] [listing eight types of emergency medical services personnel]; 10 NYCRR 800.20 [c] [5] [i] [describing the required curricula for various classes of first responders]). Basic EMTs function in a "pre-hospital setting" and their activities are generally restricted to "CPR, oxygen administration, bleeding control, foreign body airway obstruction removal, and spinal immobilization."[4] Most EMTs (who are not specially certified as paramedics) are not authorized by law to administer medication, such as epinephrine, or perform invasive procedures, and do not have access to advanced diagnostic and medical treatment equipment or physician assistance (*see generally* 10 NYCRR 800.20 [c] [5] [i] [a]-[c]), all of which are common in public and private hospital facilities. EMTs cannot be realistically compared to the proprietary medical professionals whose licensure requires extensive educational and training credentials, and who typically provide services at hospital or medical facilities rather than in the unpredictable community-at-large.

---

**3.** In fact, as Judge Abdus-Salaam's concurrence observes (*see* concurring op at 437), government-operated ambulances handle approximately two thirds of EMS tours in New York City (*see* 2012/2013 Ann Rep of Fire Dept of City of New York at 27, available at http://www.nyc.gov/html/fdny/pdf/publications/annual_reports/2012_annual_report.pdf [accessed June 19, 2013]).

**4.** *See* Fire Dept of City of New York, http://www.nyc.gov/html/fdny/html/community/emt_medic_faq.shtml (accessed June 19, 2013).

Public policy considerations support this analysis. The rationale underlying the government-function doctrine rests on several critical concerns: that the costs of tort recoveries would be excessively burdensome for taxpayers; the threat of liability could dissuade municipalities from maintaining emergency medical and ambulance services; and extensive exposure to liability could consequently render municipal governments less, not more, effective in protecting their citizens (see Laratro, 8 NY3d at 82). This, in turn, would place the public at greater risk of danger, particularly in locales that are a considerable distance from private medical or hospital emergency care. Even a metropolis like New York City could feel a chilling effect when it considers the prospect of unknown liability exposure from the thousands of EMS runs its performs on a daily basis.[5] It would be an unfortunate consequence if municipal emergency response systems were limited to mere transport service rather than emergency medical stabilization measures. We therefore decline to adopt a rule that has the potential to undermine this significant aspect of the government's 911 emergency response system.

Hence, we hold that a municipal emergency response system—including the ambulance assistance rendered by first responders such as the FDNY EMTs in this case—should be viewed as "a classic governmental, rather than proprietary, function" (Valdez, 18 NY3d at 75).

## IV

 Our conclusion does not necessarily immunize the City from liability because plaintiffs may yet establish that a special duty was owed to them. Of the three ways that a plaintiff may prove the existence of a special duty, only the second is at issue in this appeal—whether the City voluntarily assumed a "special relationship" with the plaintiffs beyond the duty that is owed to the public generally. The response to that question requires the presence of four elements:

> " '(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge

---

5. During the 2012 fiscal year alone, there were approximately 1.4 million EMS apparatus responses in New York City—an average of approximately 3,800 per day—most of which were performed by municipal employees (see 2012/2013 Ann Rep of Fire Dept of City of New York at 26-27, available at http://www.nyc.gov/html/fdny/pdf/publications/annual_reports/2012_annual _report.pdf [accessed June 19, 2013]).

on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking' " (*Laratro*, 8 NY3d at 83, quoting *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]).

A plaintiff must satisfy each of these factors in order to establish a special relationship. Here, the parties' dispute centers on the first and fourth elements. We agree with the Appellate Division that plaintiffs have adequately presented questions of fact on both of these factors.

Tiffany's mother recalled that once she realized the treatment provided by the EMTs would be limited to CPR, she "asked them to please take Tiffany to Montefiore Hospital right away, because it was only a few minutes away from our house at that time." The EMT apparently continued performing CPR and allegedly indicated that he was awaiting the arrival of ALS ambulance personnel. This poses a question of fact as to whether the EMTs, through their actions or promises, assumed an affirmative duty in deciding to have ALS paramedics undertake more sophisticated medical treatment rather than transporting the child to a hospital.

A factual resolution by a jury is also necessary to resolve the justifiable reliance element. It is possible that a fact finder could conclude that it was reasonable for Tiffany's mother to rely on the EMTs' alleged assurances rather than seek an alternative method for transporting Tiffany to the nearby hospital since the child's mother claims that she was not informed that it would take about 20 minutes for the ALS ambulance to arrive. Although it is true, as the City contends, that plaintiffs have not specifically identified any " 'other available avenues of protection' " to which the mother could have resorted (*Dinardo v City of New York*, 13 NY3d 872, 874 [2009], quoting *Cuffy*, 69 NY2d at 261), the allegations raise the question of whether the EMTs may have "lulled" plaintiffs "into a false sense of security" (*Dinardo*, 13 NY3d at 874 [internal quotation marks omitted]). Plaintiffs are therefore entitled to show how the EMTs' statements or "conduct deprived [plaintiffs] of assistance that reasonably could have been expected from another source" (*Merced v City of New York*, 75 NY2d 798, 800 [1990]). In this regard, plaintiffs have the ultimate burden of establishing that some other reasonable alternative was available (*see Valdez*, 18 NY3d at 75).

In sum, because there are issues of fact associated with the eventual determination as to whether the City owed a special duty to plaintiffs, the City is not entitled to summary judgment dismissing the complaint against it.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

SMITH, J. (concurring). I concur in the result, but not the reasoning, of the majority opinion. I am unable to find in this record evidence either of a promise (implicit or explicit) by the EMTs to do anything other than what they in fact did, or of any justifiable reliance by either plaintiff on such a promise. I would vote to dismiss the complaint if I thought, as the majority does, that the EMTs were performing a governmental function.

But the provision of medical care—including emergency medical care—is not something that only government does or can do. I think the label "proprietary" better suits the activity of the EMTs here, and thus I conclude that the doctrine of governmental immunity does not apply to this case.

The doctrine has always been limited to those functions that are unique to government. For example, we have held that, in the absence of a special duty, a suit cannot be based on negligence in providing police protection (*Valdez v City of New York*, 18 NY3d 69 [2011]); maintaining a registry of child care centers (*McLean v City of New York*, 12 NY3d 194 [2009]); performing safety inspections of public vessels (*Metz v State of New York*, 20 NY3d 175 [2012]); or issuing a death certificate (*Lauer v City of New York*, 95 NY2d 95 [2000]). Governmental immunity does not apply when a public employee, acting in the course of his or her employment, commits an ordinary tort that anyone else might commit—for example, when the employee is negligent in driving a car (*Dooley v State of New York*, 254 App Div 381 [1938], *affd* 280 NY 748 [1939]) or firing a gun (*Buckley v City of New York*, 56 NY2d 300 [1982]). There are difficult, borderline cases: when a public entity is sued for failing to protect from harm the occupants of a building that it owns, it may not be obvious whether it is acting as a landlord providing security—in which case it is held to the same standards as a private landlord (*Miller v State of New York*, 62 NY2d 506 [1984])—or as a government deciding on the allocation of police resources—in which case it may claim immunity (*Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428 [2011]).

It has long been accepted that the provision of medical care by a governmental entity falls on the "proprietary" side of the line, so that in such cases the doctrine of governmental immunity is inapplicable. There are many cases involving alleged medical malpractice in publicly-owned hospitals, in which the unavailability of immunity has apparently been assumed without discussion (*e.g. Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592 [1999]; *Matter of Beary v City of Rye*, 44 NY2d 398 [1978]; *Matter of Murray v City of New York*, 30 NY2d 113 [1972]; *Schempp v City of New York*, 25 AD2d 649 [1st Dept 1966], *affd* 19 NY2d 728 [1967]). In *Schrempf v State of New York* (66 NY2d 289, 293-294 [1985]), we expressly held that the rule that "the State cannot be held liable for negligent failure to perform governmental activities . . . has no application in cases where the State engages in a proprietary function . . . such as providing medical and psychiatric care." No exception has been made where the care is provided on an "emergency" basis (*see Murray*, 30 NY2d at 115; *Garcia v New York City Health & Hosps. Corp.*, 299 AD2d 268, 269 [1st Dept 2002]).

Yet the majority today concludes that the emergency medical care provided by the City-employed EMTs in this case was a governmental function, because the EMTs arrived at plaintiffs' home in a City ambulance. The majority points out that in *Laratro v City of New York* (8 NY3d 79, 82-83 [2006]) we listed "the duty to provide . . . ambulance service" as among those that "the municipality owes to the general public," and accordingly applied the governmental immunity doctrine (majority op at 427). But the service we were referring to in *Laratro* was the *dispatching* of an ambulance in response to a 911 call; the claim in *Laratro*, which we held barred by governmental immunity, was that a City-employed 911 operator was negligent in transmitting a request for emergency help. Answering a 911 call and seeing that help, where needed, is promptly sent is clearly a governmental function—so clearly that *Laratro* does not even discuss the governmental-proprietary distinction. The majority also relies on a number of out-of-state cases (*see* majority op at 428-429), but many of those are more similar to *Laratro* than to this case; only one, *Smyser v City of Peoria* (215 Ariz 428, 435-436, 160 P3d 1186, 1193-1194 [Ct App 2007]), involved alleged negligence in providing emergency medical care after an ambulance arrived.

Where that is the allegation, I see no reason why immunity should be more available to a city than if city employees were

providing similar care in the emergency room of a city hospital; or why a city should be immune for acts that could clearly be the basis of suit if the EMTs were employed by a private ambulance service responding to the same call. Of course it is true, as the majority says, that EMTs do not provide the broad range of medical care that would be available in a hospital or a doctor's office (*see* majority op at 429); but why does that make one activity governmental and the other proprietary? The more important fact, I suggest, is that the services of ambulance-dispatched EMTs, like other forms of medical care, can be and often are furnished by private providers.

The majority emphasizes "public policy considerations" (majority op at 430), arguing essentially that tort liability will burden municipalities excessively, and dissuade them from offering life-saving services. I agree that this is a legitimate concern—but it seems to me to apply no less to the equally important services provided in municipal hospitals. In general, it may well be a bad idea, where no special duty is found, to subject municipalities to potentially huge liability in cases involving such catastrophic injuries as the one suffered by the child plaintiff here. But it may be an even worse idea to exempt municipal agencies from that liability without also exempting their competitors in the private sector. If the burden is too heavy for the taxpayers to bear, why should the owner of a private ambulance service be asked to bear it? And if government is to be exempt from such liability when private providers are not, does that not invite the government to load excessive burdens on the private sector, without worrying about the consequences to itself?

I am not an uncritical admirer of our tort system, but I think it is best administered when public and private parties similarly situated are bound by the same rules. I therefore disagree with the favored treatment that the majority would accord to public entities that provide emergency medical care.

ABDUS-SALAAM, J. (concurring). This Court must balance the important public policy of insulating the government from tort liability for essential services it provides to the public, with the equally important principle that those who undertake to provide medical treatment must do so with reasonable care. While I agree that the Appellate Division properly reinstated the complaint against the City, I believe that the majority's rationale is incorrect. I would hold that the EMTs performed a proprietary function, and that there is a triable issue of fact concerning proximate cause.

As an initial matter, I differ with the majority's interpretation of the Appellate Division's decision. According to the majority, the Appellate Division held that the EMTs' actions were governmental in nature and that issues of fact existed as to whether the City had assumed a special duty to plaintiffs and had proximately caused their injuries (*see* majority op at 425).

My reading of the decision is that the Appellate Division determined that the City "assumed a special duty toward th[ese] plaintiff[s]" (90 AD3d 501, 504 [1st Dept 2011]), and that no issues of fact remained as to this point. The court held that the EMTs' "assurances and advice" that it would be best to wait for the ALS ambulance rather than transport Tiffany to the hospital "constituted an assumption, through promises or actions, to act on behalf of infant plaintiff" (*id.* [internal alterations and quotation marks omitted]), and that "[t]he mother justifiably relied on the EMS technicians, who had taken control of the emergency situation, and who elected to await the arrival of the ALS ambulance" (*id.* at 505). There was no dispute between the parties as to whether the remaining two factors required for a special relationship were satisfied. Thus, the dispositive issue of fact discerned by the Appellate Division was with respect to proximate cause, not special relationship.[1]

I disagree with the majority's conclusion that municipal EMTs perform a governmental function. The provision of medical treatment, whether by an EMT or a doctor, either in an emergency or a non-emergency situation, simply is not a governmental function.

Here, the City, by dispatching an ambulance to plaintiffs' home where EMTs treated Tiffany, acted in a dual proprietary and governmental capacity. As we observed in *Matter of World Trade Ctr. Bombing Litig.* (17 NY3d 428 [2011]):

> "[I]n light of the fact that the varied functions of a governmental entity can be interspersed with both governmental and proprietary elements, the determination of the primary capacity under which a governmental agency was acting turns solely on the acts or omissions claimed to have caused the injury" (17 NY3d at 447).

---

**1.** The Appellate Division did indicate that the mother's affidavit in opposition to a different motion made by another defendant, nurse Russo, might have raised an issue of fact because it did not specifically allege that the mother asked the EMTs to transport her daughter to the hospital. But the court found her affidavit "irrelevant" to the City's motion (90 AD3d at 505).

I agree with plaintiffs and my concurring colleagues that the dispatch of the ambulance by the 911 operator was a governmental act (*see Laratro v City of New York*, 8 NY3d 79, 82-83 [2006]; *Sherpa v New York City Health & Hosps. Corp.*, 90 AD3d 738, 740 [2d Dept 2011]), while the EMTs' care and treatment of Tiffany was proprietary (*see e.g. Schrempf v State of New York*, 66 NY2d 289, 293-294 [1985] [state mental hospital engaged in proprietary function by treating and releasing patient]; *Kowal v Deer Park Fire Dist.*, 13 AD3d 489, 491 [2d Dept 2004] ["misfeasance with respect to medical treatment . . . is not a governmental function" and special relationship not applicable where fire department ambulance crew member "undertook the duty to treat the decedent"]; *Fonville v New York City Health & Hosps. Corp.*, 300 AD2d 623, 624 [2d Dept 2002] [claim that EMT rendered improper treatment reinstated, even absent a showing of special duty, because EMT had duty to perform with due care]). That the City's emergency medical services are assigned to the fire department does not mean, as suggested by the majority, that the entire EMS operation, including medical treatment, is a governmental function.

Nor does our decision in *Laratro* mandate that the entire EMS operation be considered a governmental function. In *Laratro*, we determined that, absent a special relationship, the City could not be held liable for the alleged negligence of a 911 operator because the dispatch of ambulances in response to 911 calls is a governmental function (*see* 8 NY3d at 82-83). This case does not involve a 911 operator's delay in responding to an emergency call; rather, it concerns the allegedly negligent medical care and treatment rendered by the EMTs once they arrived at plaintiffs' home. Thus, as plaintiffs and my concurring colleagues point out, *Laratro* does not necessarily extend to, or control the outcome, in this case.

It is beyond dispute that in New York, government hospitals are subject to liability for negligent medical treatment without any required showing by a plaintiff of a special relationship (*see e.g. Schrempf*, 66 NY2d at 293-294; *Sukhraj v New York City Health & Hosps. Corp.*, 106 AD3d 809 [2d Dept 2013]).[2] By grouping the provision of medical treatment by EMTs with the

---

2. In this regard, the majority's citation to *Edwards v City of Portsmouth* (237 Va 167, 375 SE2d 747 [1989]), a decision by the Supreme Court of Virginia, is inapposite. The Virginia court has held, in contrast to New York jurisprudence, that "hospital services provided by a city [are] an exercise of a governmental function" (*Edwards*, 237 Va at 171, 375 SE2d at 749, citing *City*

(n. cont'd)

actions of "other first responders" (majority op at 428), the majority misses the point that unlike fire and police protection—services not traditionally provided by the private sector—the private sector has long been involved in the provision of ambulance and emergency medical services (cf. *Sebastian v State of New York*, 93 NY2d 790, 795 [1999] [patient's placement and escape from a facility for juvenile delinquents "derives from State activities that are distinctly governmental and have no private sector counterpart"]). In fact, roughly 35% of all 911 ambulance tours in New York City are operated by private ambulances.[3] Those who undertake to provide medical treatment must exercise reasonable care—regardless of whether the caregiver is a doctor, nurse, or EMT, or whether the care occurs in a "pre-hospital setting" (majority op at 429) or a hospital setting—and this duty should not be circumscribed by the constraints of governmental immunity.

I share the concerns of my colleagues that tort liability for negligent treatment rendered by municipal EMTs and other medical personnel will burden the public fisc and possibly dissuade municipalities from continuing to provide emergency medical treatment in connection with their ambulance services. However, I do not believe this concern should cause us to employ a strained legal analysis in order to reach a desired result.

In the majority's view, defining medical treatment by EMTs as a governmental function, and requiring plaintiffs to demonstrate that a special duty exists, advances public policy by limiting the exposure of municipalities to excessive tort recoveries. This decision will not achieve the majority's goal. It will be the

---

of *Richmond v Long*, 58 Va [17 Gratt] 375 [1867]). Similarly, many of the other out-of-state cases cited by the majority, which address a municipality's general authority to operate a public ambulance system (see *Ayala v City of Corpus Christi*, 507 SW2d 324, 328 [Tx Civ App 1974]) and its potential liability for the negligent actions of 911 dispatchers (see *Ross v Consumers Power Co.*, 420 Mich 567, 654, 363 NW2d 641, 677 [1984]; *Wanzer v District of Columbia*, 580 A2d 127, 131 [DC Ct App 1990]), ambulance drivers (see *King v Williams*, 5 Ohio St 3d 137, 140, 449 NE2d 452, 455 [1983]; *McIver v Smith*, 134 NC App 583, 587, 518 SE2d 522, 525 [Ct App 1999]; *Smith v City of Lexington*, 307 SW2d 568, 569-570 [Ky Ct App 1957]), and operators of police vehicles (see *Thornton v State*, 233 Kan 737, 742, 666 P2d 655, 659 [1983]), do not support the conclusion that the provision of medical care by EMTs must be classified as a governmental function.

3. *Hearing on the Fiscal Year 2013 Executive Budget*, Finance Division Briefing Paper, Fire Department, June 1, 2012 at 5, available at http://council.nyc.gov/downloads/pdf/budget/2013/execbudget/057%20Fire%20Department.pdf (last visited June 19, 2013).

rare case where an injured party, having been assessed and treated by an EMT, will not be able to demonstrate the four elements of a special relationship: (1) assumption by the EMT of an affirmative duty to act on behalf of the injured party, (2) knowledge by the EMT that inaction could lead to harm, (3) some form of direct contact between the EMT and the injured party, and (4) that party's justifiable reliance on the EMT's affirmative undertaking (*see Mastroianni v County of Suffolk*, 91 NY2d 198, 204 [1997]; *Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). Thus, even in special duty cases, municipalities will likely be exposed to liability.

In that regard, unlike my concurring colleagues who find no record evidence of a special relationship, I think the facts of this case demonstrate that the EMTs assumed a special duty toward plaintiffs (*see* 90 AD3d at 504). Merely by undertaking to treat Tiffany, the EMTs assumed an affirmative duty to act on her behalf (*see Cuffy*, 69 NY2d at 260 [a municipality assumes an affirmative duty to act "through promises or actions"]) and plaintiffs justifiably relied on the EMTs "who had taken control of the emergency situation" (90 AD3d at 505). Even if I could agree with the majority that the EMTs were performing a governmental function, I would nonetheless conclude that there is no triable issue regarding a special relationship between plaintiffs and the EMTs.

Chief Judge LIPPMAN and Judges READ and RIVERA concur with Judge GRAFFEO; Judge SMITH concurs in result in an opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM concurs in result in a separate opinion.

Order affirmed, with costs, and certified question answered in the affirmative.