■ LILLIE MOORE, as Grandmother and Custodial Guardian of DAIQUAN SANDERS, an Infant, Respondent, v DEL-RICH PROPERTIES, INC., Defendant, and CITY OF BUFFALO URBAN RENEWAL AGENCY et al., Appellants. [58 NYS3d 772]—

Appeals from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered February 17, 2016. The order, among other things, denied the motions of defendants City of Buffalo and City of Buffalo Urban Renewal Agency for summary judgment.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for injuries her grandson allegedly sustained as a result of exposure to lead paint while he was visiting and then residing with plaintiff in an apartment owned by defendant Del-Rich Properties, Inc. (Del-Rich). After it was discovered that there were dangerous levels of lead paint throughout the structure, Del-Rich applied to enroll in the Lead Hazard Control Project (Project), which was a federally-funded grant program designed to address the high rate of lead poisoning in and around defendant City of Buffalo (City). Employees of defendant City of Buffalo Urban Renewal Agency (BURA) helped manage the Project, and properties enrolled in the Project would receive lead abatement work performed by contractors chosen by the Project.

The lead abatement work was performed at plaintiff's apartment in or around February 2000. Nevertheless, when the property was retested in April 2001, dangerous levels of lead were again detected. Plaintiff alleges that the City and BURA (collectively, defendants) are liable for the injuries sustained by her grandson as a result of the negligent lead abatement work performed at the residence pursuant to the Project.

The City moved for summary judgment dismissing the complaint against it, contending that it was not negligent as a matter of law; that plaintiff could not establish liability against the City, a government entity, because plaintiff could not establish a special relationship with the City; and that the City was immune from suit because its actions were discretionary. BURA likewise moved for summary judgment dismissing the complaint against it, incorporating all of the factual and legal arguments raised by the City. Plaintiff cross-moved for partial summary judgment on the issue of negligence against defendants. We conclude that Supreme Court properly denied defendants' respective motions and properly granted in part plaintiff's cross motion for summary judgment, determining as a matter of law that defendants' actions were proprietary and therefore not subject to governmental immunity.

"When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal

entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose. If the municipality's actions fall in the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties" (*Applewhite v Accuhealth, Inc.*, 21 NY3d 420, 425 [2013]). "The relevant inquiry in determining whether a governmental agency is acting within a governmental or proprietary capacity is to examine the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred" (*Turturro v City of New York*, 28 NY3d 469, 478 [2016] [internal quotation marks omitted]). That determination " 'turns solely on the acts or omissions claimed to have caused the injury' " (*id.*).

"If it is determined that a municipality was exercising a governmental function, the next inquiry focuses on the extent to which the municipality owed a 'special duty' to the injured party . . . It is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself" (*Applewhite*, 21 NY3d at 426; *see Turturro*, 28 NY3d at 478). Finally, even if plaintiff can establish a special duty or relationship, defendants may nevertheless be entitled to dismissal of the claims under the "governmental function immunity" defense, which provides, in pertinent part, that " '[a] public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality's liability even when the conduct is negligent' . . . In other words, even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a *governmental function* can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority" (*Valdez v City of New York*, 18 NY3d 69, 76 [2011] [emphasis added]).

We agree with plaintiff that the court properly determined that defendants were acting in a proprietary capacity as a matter of law. The acts and omissions of defendants, as alleged by plaintiff, " 'essentially substitute for or supplement traditionally private enterprises' " (*Turturro*, 28 NY3d at 477). The evidence submitted by defendants in support of their motions established that defendants, through the jointly-managed Project, solicited homeowners to apply for enrollment in the Project; determined whether those applicants were qualified for the Project; performed preabatement testing of the property; identi-

fied the areas in need of abatement; prepared a list of specifications for each individual remediation project; prepared a bid package; solicited bids for work at the applicant's residence; chose the particular contractor to perform the abatement work; typed up the contract between the homeowner and the contractor; approved that contract after it was signed by the homeowner and the contractor at City Hall; issued a permit for the remediation work; arranged for the relocation of the occupants during the remediation work; established a time schedule for the remediation work; inspected the remediation work "as it was being performed"; tested the property after the abatement work was completed; and obtained a written approval of the work from the homeowner.

Contrary to defendants' contentions, they did not merely inspect the premises and order that abatement work be performed (*cf. Pelaez v Seide*, 2 NY3d 186, 194-196 [2004]; *Rivera v Village of Spring Val.*, 284 AD2d 521, 522 [2001]). Indeed, they coordinated and oversaw the entire abatement process at plaintiff's residence. It is well established that maintenance and care related to buildings with tenants is generally a proprietary function (*see Miller v State of New York*, 62 NY2d 506, 513 [1984]; *Johnson City Cent. School Dist. v Fidelity & Deposit Co. of Md.*, 272 AD2d 818, 821 [2000]; *see generally Turturro*, 28 NY3d at 478). In our view, defendants voluntarily assumed the homeowner's duty to remediate the lead paint at plaintiff's residence. Once defendants assumed that proprietary duty, they "also assume[d] the burdens incident thereto" (*Augustine v Town of Brant*, 249 NY 198, 206 [1928], *rearg denied* 250 NY 537 [1929]).

Based on our determination, we do not address defendants' remaining contentions concerning plaintiff's failure to establish a special duty or relationship with defendants or the governmental immunity defense, which "has no applicability where[, as here,] the municipality has acted in a proprietary capacity" (*Turturro*, 28 NY3d at 479).

Contrary to defendants further contentions, they may be liable "for affirmative acts of negligence, such as negligent lead paint abatement, notwithstanding a lack of ownership" (*Ortiz v Lehmann*, 118 AD3d 1389, 1390 [2014]), and there are triable issues of fact whether the abatement was negligently performed, causing plaintiff's grandson to sustain additional injuries after the abatement was performed (*see Manford v Wilber*, 128 AD3d 1544, 1544 [2015], *lv dismissed* 26 NY3d 1082 [2016]). Present—Whalen, P.J., Centra, Lindley, Troutman and Scudder, JJ.