Halberstam v Port Auth. of N.Y. & N.J. (2019 NY Slip Op 06479)





Halberstam v Port Auth. of N.Y. & N.J.


2019 NY Slip Op 06479


Decided on September 11, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 11, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOHN M. LEVENTHAL
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2017-07537
 (Index No. 31513/06)

[*1]Hershel Halberstam, etc., et al., appellants,
v
Port Authority of New York and New Jersey, respondent.


Goldstein & Goldstein, P.C., Brooklyn, NY (Mark I. Goldstein and Cindy A. Moonsammy of counsel), for appellants.
Port Authority Law Department, New York, NY (Kathleen Gill Miller of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Kings County (Gloria M. Dabiri, J.), dated June 7, 2017. The order granted the defendant's motion for summary judgment dismissing the complaint.
ORDERED that the order is affirmed, with costs.
On April 6, 2005, the plaintiff Leah Halberstam (hereinafter Halberstam), who was pregnant, was on a plane from Jerusalem to New York. Shortly before the plane landed, her lower back began to hurt. She went to the bathroom and noticed staining in her underwear. Once the plane landed and arrived at the gate, Halberstam alerted a flight attendant. The flight attendant called for help from the defendant, which provides emergency medical services at JFK airport. Emergency medical technicians (hereinafter EMTs) employed by the defendant arrived and brought Halberstam to an ambulance on the tarmac. The ambulance began to transport Halberstam to a hospital, but while it was en route, the ambulance began to malfunction. The EMT driving the ambulance called for an ambulance operated by the Fire Department of the City of New York (hereinafter FDNY) to meet them at a particular building at JFK airport. The FDNY ambulance was waiting at the building when they arrived and transported Halberstam to Jamaica Hospital, where she delivered the infant plaintiff. Before the infant plaintiff was delivered, Halberstam experienced a complete placental abruption. The infant plaintiff allegedly was born with brain damage and severe physical disabilities.
The plaintiffs commenced this action against the defendant. They alleged that the ambulance malfunction caused a delay in getting Halberstam to the hospital, which resulted in, inter alia, personal injuries to the infant plaintiff. The defendant moved for summary judgment dismissing the complaint. By order dated June 7, 2017, the Supreme Court granted the defendant's motion. The plaintiffs appeal.
" When a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose'" (Turturro v City of New York, 28 NY3d 469, [*2]477, quoting Applewhite v Accuhealth, Inc., 21 NY3d 420, 425). "A government entity performs a purely proprietary role when its activities essentially substitute for or supplement traditionally private enterprises'" (Applewhite v Accuhealth, Inc., 21 NY3d at 425, quoting Sebastian v State of New York, 93 NY2d 790, 793; see Granata v City of White Plains, 120 AD3d 1187, 1188). "In contrast, a municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" (Applewhite v Accuhealth, Inc., 21 NY3d at 425 [internal quotation marks omitted]). If it is determined that a municipality was exercising a governmental function at the time of the alleged negligence, it will not be held liable unless it owed a "special duty" to the injured party (id. at 426; see Gonzalez v State of New York, 156 AD3d 764, 764; Cockburn v City of New York, 129 AD3d 895, 896).
"Protecting health and safety is one of municipal government's most important duties" (Laratro v City of New York, 8 NY3d 79, 81), and emergency medical services "have widely been considered one of government's critical duties" (Applewhite v Accuhealth, Inc., 21 NY3d at 428). Thus, the Court of Appeals has held that "[w]hen a municipality provides ambulance service by emergency medical technicians in response to a 911 call for assistance, it performs a governmental function and cannot be held liable unless it owed a special duty' to the injured party" (id. at 423-424; see Cockburn v City of New York, 129 AD3d at 896; Estate of Gail Radvin v City of New York, 119 AD3d 730, 732-733; Etienne v New York City Police Dept., 37 AD3d 647, 649).
Here, we agree with the Supreme Court's determination that the defendant was engaged in a governmental function as a provider of emergency medical services at JFK airport, so that the defendant could not be held liable to the plaintiffs unless it owed them a special duty (see Applewhite v Accuhealth, Inc., 21 NY3d at 426; Valdez v City of New York, 18 NY3d 69, 75; Gonzalez v State of New York, 156 AD3d at 764; Estate of Gail Radvin v City of New York, 119 AD3d at 732-733; Torres v City of New York, 116 AD3d 947, 948; Kupferstein v City of New York, 101 AD3d 952, 953; Dixon v Village of Spring Val., 50 AD3d 943, 943). One way to prove the existence of a special duty is by showing that the defendant assumed a "special relationship" with the plaintiff beyond the duty that is owed to the public generally (Applewhite v Accuhealth, Inc., 21 NY3d at 430; see Gonzalez v State of New York, 156 AD3d at 765). "The plaintiff has the heavy burden of establishing the existence of a special relationship by proving all of the following elements: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the party's justifiable reliance on the municipality's affirmative undertaking" (Dixon v Village of Spring Val., 50 AD3d at 943-944; see Applewhite v Accuhealth, Inc., 21 NY3d at 430-431; Cuffy v City of New York, 69 NY2d 255, 260). Of the four factors, the "justifiable reliance" element is particularly "critical" because it "provides the essential causative link between the special duty assumed by the municipality and the alleged injury" (Valdez v City of New York, 18 NY3d at 81 [internal quotation marks omitted]).
Here, the defendant established, prima facie, that it did not owe a special duty to the plaintiffs, and the plaintiffs failed to raise a triable issue of fact in opposition (see Dixon v Village of Spring Val., 50 AD3d at 944). There is nothing in the record to suggest that the defendant's agents lulled Halberstam into a false sense of security or induced her to forego other avenues of transportation to the hospital, and therefore placed the plaintiffs in a worse position than they would have been in had the defendant never assumed the duty (see Gonzalez v State of New York, 156 AD3d at 765; Dixon v Village of Spring Val., 50 AD3d at 944; cf. Applewhite v Accuhealth, Inc., 21 NY3d at 431-432). Accordingly, we agree with the Supreme Court's determination granting the defendant's motion for summary judgment dismissing the complaint.
MASTRO, J.P., LEVENTHAL, MALTESE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court