Grasso v Nassau County (2020 NY Slip Op 01329)





Grasso v Nassau County


2020 NY Slip Op 01329


Decided on February 26, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 26, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JEFFREY A. COHEN
HECTOR D. LASALLE
ANGELA G. IANNACCI, JJ.


2017-03335
 (Index No. 15373/11)

[*1]Michael Grasso, etc., et al., respondents-appellants,
v
Nassau County, et al., respondents, Nassau University Medical Center, etc., et al., appellants-respondents, et al., defendants.


Kerley, Walsh, Matera & Cinquemani, P.C., Seaford, NY (Lauren B. Bristol and James Tuffin of counsel), for appellants-respondents.
Law Offices of Thomas F. Liotti, LLC, Garden City, NY (Lucia Maria Ciaravino of counsel), for respondents-appellants.
Jared A. Kasschau, County Attorney, Mineola, NY (Jackie L. Gross of counsel), for respondents Nassau County and Nassau County Police Department.
Sette & Apoznanski (Russo & Tambasco, Melville, NY [Susan J. Mitola], of counsel), for respondents Ondrej A. Galan and Jana M. Galan.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice and wrongful death, etc., the defendants Nassau University Medical Center and NuHealth System appeal, and the plaintiffs cross-appeal, from an order of the Supreme Court, Nassau County (Jeffrey S. Brown, J.), entered January 25, 2017. The order, insofar as appealed from, denied the motion of the defendants Nassau University Medical Center and NuHealth System for summary judgment dismissing the complaint and all cross claims insofar as asserted against them. The order, insofar as cross-appealed from, granted the motion of the defendants Ondrej A. Galan and Jana M. Galan for summary judgment dismissing the complaint insofar as asserted against them, and granted that branch of the motion of the defendants Nassau County and Nassau County Police Department which was for summary judgment dismissing the complaint insofar as asserted against them.
ORDERED that the order is affirmed insofar as appealed and cross-appealed from, with one bill of costs to the plaintiffs and the defendants Ondrej A. Galan and Jana M. Galan payable by the defendants Nassau University Medical Center and NuHealth System, and one bill of costs to the defendants Ondrej A. Galan and Jana M. Galan and the defendants Nassau County and Nassau County Police Department payable by the plaintiffs.
On January 10, 2011, the decedent was driving on Old Tappan Road in Lattingtown when she crossed the double-yellow line into the opposing lane of traffic and collided head-on with a vehicle driven by the defendant Ondrej A. Galan. After receiving a 911 call, the defendants Nassau County Police Department (hereinafter NCPD) and Locust Valley Fire Department (hereinafter LVFD) arrived at the scene of the accident. The decedent was removed from her vehicle, placed into [*2]an LVFD ambulance, and transported to Glen Cove High School. An NCPD helicopter picked up the decedent at Glen Cove High School and transported her to the defendant Nassau University Medical Center (hereinafter NUMC).
At NUMC, the decedent was brought into the emergency room and was attended to by the trauma team. The trauma team took the decedent's vital signs, placed her on a cardiac monitor, placed an intravenous line with normal saline in her left hand and a right femoral central line in her groin, performed a sonogram on her heart, and intubated her when she went into shock. After the sonogram found that the decedent had pericardial tamponade, she was rushed to the operating room, but she experienced cardiac arrest during transport to the operating room. While the anesthesia team and some members of the surgical team were performing CPR, the attending surgeon performed a left lateral thoracotomy and sutured a small tear in the right atrium of the decedent's heart. However, the decedent's heart had no natural rhythm, and attempts to restart the heart using open-heart compressions, medications, and electric paddles failed. The decedent was pronounced dead at 9:16 a.m.
The plaintiffs, Michael Grasso and Linda Grasso, as co-administrators of the decedent's estate, commenced this action, inter alia, to recover damages for medical malpractice and wrongful death against, among others, Ondrej and Jana M. Galan (hereinafter together the Galan defendants); Nassau County and the NCPD (hereinafter together the County defendants); and Nassau University Medical Center and NuHealth System (hereinafter together the NUMC defendants). The Galan defendants asserted cross claims against all other defendants for contribution and/or indemnification. Following discovery, the Galan defendants moved for summary judgment dismissing the complaint insofar as asserted against them, and the County defendants and the NUMC defendants separately moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them.
The Supreme Court granted the motions of the Galan defendants and the County defendants, and denied the motion of the NUMC defendants. The NUMC defendants appeal from so much of the order as denied their motion, and the plaintiffs cross-appeal from so much of the order as granted the motion of the Galan defendants, and that branch of the County defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them.
"Defendants moving for summary judgment in a negligence action arising out of an automobile accident have the burden of establishing, prima facie, that they were not at fault in the happening of the accident" (Nesbitt v Gallant, 149 AD3d 763, 763).
"A driver is not obligated to anticipate that a vehicle traveling in the opposite direction will cross over into oncoming traffic, and such an event constitutes a classic emergency situation, thus implicating the emergency doctrine" (Vargas v Akbar, 123 AD3d 1017, 1019). "Under the emergency doctrine, when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context'" (Vitale v Levine, 44 AD3d 935, 936, quoting Rivera v New York City Tr. Auth., 77 NY2d 322, 327). "Although the existence of an emergency and the reasonableness of the response to it generally present issues of fact (see Makagon v Toyota Motor Credit Corp., 23 AD3d 443, 444 [2005]), those issues may in appropriate circumstances be determined as a matter of law'" (Vitale v Levine, 44 AD3d at 936, quoting Bello v Transit Auth. of N.Y. City, 12 AD3d 58, 60; see Koenig v Lee, 53 AD3d 567, 567-568).
Here, the Galan defendants established their prima facie entitlement to judgment as a matter of law through Ondrej's deposition testimony that he was faced with the emergency of the decedent's vehicle driving in the wrong lane of traffic, and he made the decision in response to pull over to the side of the road and stop his vehicle to avoid a collision (see Vargas v Akbar, 123 AD3d at 1019; Koenig v Lee, 53 AD3d at 568; see also Bates v Yasin, 13 AD3d 474, 474). In opposition, the plaintiffs failed to submit any evidence, other than mere speculation, to raise a triable issue of [*3]fact as to whether Ondrej's reaction to the emergency was unreasonable or whether Ondrej's negligence contributed to bringing about the emergency (see Koenig v Lee, 53 AD3d at 568). Accordingly, we agree with the Supreme Court's determination granting the Galan defendants' motion for summary judgment dismissing the complaint insofar as asserted against them.
"When a municipality provides ambulance service by emergency medical technicians in response to a 911 call for assistance, it performs a governmental function and cannot be held liable unless it owed a special duty' to the injured party" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 423-424). A special duty arises in three situations: "(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition" (id. at 426).
Here, the plaintiffs have not cited a statute that the County defendants allegedly violated that was enacted for the benefit of a class that the decedent belonged to or argued that the County defendants took control of a known and dangerous safety condition (see id.). Therefore, only the second prong of the special duty test is at issue here.
In determining whether a governmental entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally, four elements must be present: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (id. at 430-431 [internal quotations marks omitted]; see Laratro v City of New York, 8 NY3d 79, 83; Cuffy v City of New York, 69 NY2d 255, 260).
Here, the County defendants established, prima facie, that the first element is not present in that they did not assume an affirmative duty to act on behalf of the decedent through promises or actions. In opposition, the plaintiffs failed to raise a triable issue of fact as to whether the County defendants, through either promises or actions, assumed an affirmative duty to act on the decedent's behalf (cf. Applewhite v Accuhealth, Inc., 21 NY3d at 430-431). Thus, the County defendants did not owe a special duty to the decedent for which they could be found liable (see id. at 426). Accordingly, we agree with the Supreme Court's determination granting that branch of the County defendants' motion which was for summary judgment dismissing the complaint insofar as asserted against them.
In order to prove medical malpractice, a plaintiff must demonstrate a deviation or departure from accepted community standards of practice and that such departure was a proximate cause of injury or damage (see Whitnum v Plastic & Reconstructive Surgery, P.C., 142 AD3d 495, 497; Geffner v North Shore Univ. Hosp., 57 AD3d 839, 842). "In moving for summary judgment dismissing a cause of action alleging medical malpractice, a defendant must establish, prima facie, either that there was no departure or that any departure was not a proximate cause of the plaintiff's injuries" (Whitnum v Plastic & Reconstructive Surgery, P.C., 142 AD3d at 497). "Once such a showing has been made, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of fact" (id.; see Alvarez v Prospect Hosp., 68 NY2d 320, 324). " Expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause'" (Novick v South Nassau Communities Hosp., 136 AD3d 999, 1000, quoting Lyons v McCauley, 252 AD2d 516, 517).
Here, the NUMC defendants established their prima facie entitlement to judgment as a matter of law through the affirmation of their expert, who averred that the NUMC defendants' treatment of the decedent did not depart from good and accepted medical practice. However, in opposition, the plaintiffs raised a triable issue of fact through their expert affidavit, wherein the expert averred that the NUMC defendants deviated from accepted medical practice. In particular, the plaintiffs' expert stated that the NUMC defendants' decision to perform a thoracotomy in the operating room rather than performing it immediately in the emergency room was a deviation from [*4]accepted medical practice and contributed to the decedent's death. Since the plaintiffs submitted a medical expert opinion that conflicted with the expert opinion submitted by the NUMC defendants, summary judgment is not appropriate (see Feinberg v Feit, 23 AD3d 517, 519).
Further, contrary to the NUMC defendants' assertion, the plaintiffs' expert was qualified to render an opinion because he established that he had specialized in thoracic and cardiovascular surgery, and thus, he possessed the requisite skill, training, education, knowledge, or experience to render a reliable opinion (see Schmitt v Medford Kidney Ctr., 121 AD3d 1088, 1089; Behar v Coren, 21 AD3d 1045, 1046-1047). The NUMC defendants' remaining contentions, that the plaintiffs' expert was unqualified because he has not performed surgery in more than 25 years, and that the expert misstated facts from the record, are issues as to the expert's credibility that should be resolved by a jury (see Velonis v Vitale, 57 AD3d 657, 658). Accordingly, we agree with the Supreme Court's determination denying the NUMC defendants' motion for summary judgment dismissing the complaint and all cross claims insofar as asserted against them.
The plaintiffs' remaining contentions have been rendered academic in light of our determination.
SCHEINKMAN, P.J., COHEN, LASALLE and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court