■ KATHY L. NUNN, Individually and as Executrix of STEVEN R. NUNN, Deceased, and as Guardian of DANIEL J. NUNN and Another, Infants, Respondent, v GTE SYLVANIA, INC., Appellant, and GLASS TECH, INC., et al., Respondents, et al., Defendants. GTE SYLVANIA, INC., Now Known as GTE PRODUCTS CORP., Third-Party Plaintiff-Appellant, v FALCONER GLASS INDUSTRIES, INC., Third-Party Defendant-Respondent. [674 NYS2d 205] —Order unanimously affirmed with costs. Memorandum: In this wrongful death action, plaintiff alleges that a defective 400 amp QSF fusible switch manufactured by defendant GTE Sylvania, Inc. (GTE), caused an explosion in 1988 that killed her husband. Supreme Court did not abuse its discretion in granting the preclusion motion of plaintiff and cross motions of defendants B & E Electric Corp. and Glass Tech, Inc., and third-party defendant pursuant to CPLR 3126, and imposing

penalties upon GTE for willfully withholding discoverable information about the defect.

In November 1983 GTE sold its Electrical Equipment Group, which manufactured QSF fusible switches, to Challenger Electrical Equipment Corporation (Challenger). After the sale, Challenger recalled 400, 600, 800 and 1200 amp QSF fusible switches shipped by GTE between May 1, 1981 and April 31, 1983 as defective and subject to overheating. The switches were defective because tin, rather than silver, was used as the plating contact material. For years while this action was pending, GTE denied that it played any role in the recall program and that the switches were the subject of prior complaints or lawsuits, with the exception of a single lawsuit in Florida in 1987. As proof, GTE produced allegedly complete copies of the Challenger recall letter and the GTE-Challenger Asset Purchase Agreement. On the eve of trial in 1997, however, plaintiff learned through nonparty discovery that GTE was involved in other lawsuits concerning the defective switches and obtained an order directing GTE to produce the files. GTE located some of the files at its Record Center in Stamford, Connecticut, and gave plaintiff and the other parties unfettered access to them. The files document that GTE was engaged in a program to repair and replace the defective switches prior to the GTE-Challenger sale and that Challenger assumed responsibility for the continuation of that program after the sale. The files also document that GTE has been involved in at least six prior lawsuits concerning the defective QSF switches. It was also discovered that the previously produced copies of the recall letter and Asset Purchase Agreement were not complete and that information damaging to GTE's position had been redacted. To date, GTE has not produced a complete copy of the Asset Purchase Agreement.

At no time has GTE offered a reasonable excuse for its conduct. In 1990 GTE answered interrogatories seeking copies of documents pertaining to the switches by stating that the documents had been destroyed pursuant to a seven-year document retention policy. That was contradicted by GTE's own stated corporate policy to store such documents permanently and by the terms of the Asset Purchase Agreement that required GTE to retain such documents for 10 years. GTE contends that the newly discovered files were missing, yet they were found at GTE's Record Center where they had been stored for several years, and it was not until 1997 that GTE caused a search of its Record Center to be conducted. An expert retained by GTE on this case since at least 1990 was instrumental in

the formulation of GTE's discovery responses. GTE also utilized that expert in the other cases concerning the defective switches. GTE filed conflicting affidavits from that expert concerning his efforts to locate the missing files and has not explained why the discoverable information about the defect was not forthcoming from him. Furthermore, when GTE answered interrogatories in 1994 regarding the existence of any prior complaints or lawsuits, it based its answer on a search of a computer database of pending cases, but never so qualified its answer.

Plaintiff and the cross-moving parties sustained their initial burden of proving willfulness and GTE, in response, did not offer a reasonable excuse for its actions (*see, Kubacka v Town of N. Hempstead,* 240 AD2d 374; *Herrera v City of New York,* 238 AD2d 475, 476). Any relief granted pursuant to CPLR 3126 should be "commensurate with the particular disobedience it is designed to punish" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:8, at 758; *see generally, Oak Beach Inn Corp. v Babylon Beacon,* 62 NY2d 158, 166-167, *cert denied* 469 US 1158). In this case, we conclude that the relief granted, resolving key facts for the purpose of the action, constituted a proper exercise of discretion.

Finally, we reject GTE's remaining contention (*see,* 22 NYCRR 100.3 [E] [1] [f]). (Appeal from Order of Supreme Court, Chautauqua County, Gerace, J.—Discovery.) Present—Pine, J. P., Hayes, Wisner, Pigott, Jr., and Boehm, JJ.