■ BONNIE L. CARPENTER, Appellant, v BROWNING-FERRIS INDUSTRIES, INC., Also Known as BROWNING-FERRIS INDUSTRIES-NIAGARA DISTRICT, et al., Respondents. (Appeal No. 1.) [763 NYS2d 871] —Appeal from an order of Supreme Court, Erie County (Whelan, J.), entered May 8, 2002, which, inter alia, granted defendants' motions to dismiss the complaint.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by denying defendants' motions and reinstating the complaint and as modified the order is affirmed with costs to plaintiff.

Memorandum: This litigation began in 1992 and concerns a motor vehicle accident that occurred in 1990. Supreme Court previously granted numerous discovery orders and appointed a

discovery referee (Referee). On a prior appeal, we affirmed an order entered March 13, 1998, denying defendants' motions to dismiss the complaint " 'for plaintiff's repeated and willful failure to comply with discovery obligations and the Orders of this Court and the Discovery Referee' " (*Carpenter v Browning-Ferris Indus.*, 262 AD2d 999, 1000 [1999]). We noted in our decision therein that the attorneys for plaintiff and defendant Browning-Ferris Industries, Inc., also known as Browning-Ferris Industries-Niagara District (BFI), had "engaged in unnecessary and inappropriate antagonistic behavior during the discovery process" (*id.* at 999). We further wrote that, "[a]fter noting the 'total breakdown in civility and professional decorum between the attorneys for plaintiff and BFI', the court stated that it would give the attorneys a 'fresh start with a clean slate and a firm directive to move this case along and complete discovery' " (*id.* at 1000). The order affirmed by this Court directed, inter alia, that defendants serve "new" requests for medical authorizations on plaintiff on or before March 27, 1998. Plaintiff was directed to "respond to and furnish any and all *such authorizations* without exception, equivocation or with any conditions," upon penalty of preclusion (emphasis added). All future discovery motions were directed to be made to the Referee.

In April 1998 BFI sought an authorization to obtain the records of a doctor who treated plaintiff for an abrasion to her eye in October 1997. It subsequently sought authorizations to obtain the records of plaintiff's family doctor and OB/GYN doctor. Plaintiff refused to provide the authorizations on the ground that the records sought pertained to matters unrelated to plaintiff's claims, which are for neck and back injuries and for psychological injury. In a series of three orders, the Referee directed that those authorizations be furnished. Two of the three orders also directed discovery compliance by defendants.

In April 2000 BFI served a notice demanding a medical examination of plaintiff pursuant to CPLR 3121 and Uniform Rules for Trial Courts (22 NYCRR) § 202.17 (a). The notice directed that plaintiff produce at that examination "any x-rays, C-T scans, and other films, records or materials relating to the injuries claimed in this action." Plaintiff appeared for the examination but did not bring the items that she was directed to produce.

Thereafter, using a medical authorization furnished by plaintiff prior to April 2000, BFI obtained previously undisclosed records from the Erie County Medical Center (ECMC) pertaining to treatment received by plaintiff at ECMC in 1983

and 1985. In those records, plaintiff's medical histories variously refer to a car accident or accidents occurring two years prior to January 1983; five years prior to February 1983; and three years prior to February 1985. In responding to BFI's interrogatories, plaintiff averred that she had no recollection of the medical treatment received at ECMC in 1983 and 1985 and no recollection of being involved in any accidents other than the one giving rise to this action, with the exception of previously disclosed car accidents occurring in 1977 and 1989. Plaintiff contends that, in each of the medical histories in the ECMC records, she was mistakenly referring to the car accident that occurred in 1977.

Defendants again moved for dismissal of the complaint pursuant to CPLR 3126, and plaintiff cross-moved to transfer the motions to the Referee. The court denied plaintiff's cross motion, relieved the Referee of his duties and granted defendants' motions to dismiss the complaint. Plaintiff's subsequent motion to vacate the order and for renewal and reargument was denied. Although plaintiff characterized the latter motion as one seeking vacatur, renewal and reargument, upon our review of the record we conclude that the motion was in actuality a motion for reargument, and plaintiff's appeal from the order in appeal No. 2 denying that motion therefore must be dismissed (see Empire Ins. Co. v Food City, 167 AD2d 983, 984 [1990]).

Contrary to plaintiff's contention with respect to the order in appeal No. 1, the court did not lack jurisdiction to hear defendants' motions to dismiss the complaint and thus properly denied plaintiff's cross motion to transfer defendants' motions to the Referee. Although CPLR 3104 (c) provides that "[a]ll motions or applications made under this article" shall be made before the judge or the referee designated to supervise disclosure, we conclude that the judge who designated the referee is not thereby divested of jurisdiction to entertain a CPLR 3126 motion for dismissal. Further, even if the court erred in determining the motions in the first instance, the court nevertheless would have the power to review the Referee's order under CPLR 3104 (d). In any event, the court was authorized to, and did, relieve the Referee of his duties (see 3104 [c]).

We conclude, however, that the court abused its discretion in granting defendants' motions to dismiss the complaint. It is well settled that "[t]rial courts have broad discretion in supervising disclosure and, absent a clear abuse of that discretion, a trial court's exercise of such authority should not be disturbed" (Gadley v U.S. Sugar Co., 259 AD2d 1041, 1042 [1999]; see Kihl v Pfeffer, 94 NY2d 118, 122 [1999]; O'Brien v

*Occidental Chem. Corp.* [appeal No. 3], 266 AD2d 915 [1999]). It is equally well settled, however, that "[t]he extreme sanction of dismissal is warranted only where there is a clear showing that plaintiff's failure to comply with discovery demands was willful, contumacious or in bad faith" (*Fox v Eastman Kodak Co.*, 275 AD2d 921, 921 [2000]; *see Gadley*, 259 AD2d at 1042; *Stocker v Rupp*, 231 AD2d 872, 873 [1996]). Further, as a general rule, "the demanding party should not be granted more relief for nondisclosure than is reasonably necessary to protect legitimate interests" (*Oak Beach Inn Corp. v Babylon Beacon*, 62 NY2d 158, 166-167 [1984], *cert denied* 469 US 1158 [1985]; *see Gadley*, 259 AD2d at 1042; *Nunn v GTE Sylvania*, 251 AD2d 1089, 1091 [1998]; *Gaylord Bros. v RND Co.*, 134 AD2d 848, 849 [1987]).

Here, the court granted defendants' motions to dismiss the complaint based on the need for three orders, issued in 1994, 1996 and 1997, compelling the production of medical authorizations and records by plaintiff prior to the March 13, 1998 order; plaintiff's alleged misconduct in connection with the disclosure of a second, redacted report by Dr. Nash, a psychologist; plaintiff's alleged further misconduct in connection with the production of a cropped duplicate photograph of the accident scene; the initial refusal of plaintiff to answer questions during her deposition concerning her involvement in other motor vehicle accidents; defendants' discovery that plaintiff had been involved in "numerous other" accidents; and the failure of plaintiff to bring the requested files and records with her to the medical examination as directed.

We note at the outset that the court placed particular emphasis on the "falsification" of Dr. Nash's report and the allegedly cropped duplicate photograph. First, the court erred in noting that plaintiff was "essentially silent" on those issues. The issues concerning the Nash report and the duplicate photograph were fully addressed by plaintiff in opposition to the motions resulting in the March 13, 1998 order, and copies of those papers were submitted to the court on the instant motions. Second, the record does not support the court's summary conclusion that plaintiff's attorney was guilty of misconduct in connection with the redacted Nash report and the duplicate photograph. Included in plaintiff's opposing papers to the prior motions resulting in the March 13, 1998 order was an affidavit of plaintiff's attorney denying any involvement in or knowledge of either Dr. Nash's redacted report or the cropped duplicate photograph. Also included were the deposition testimony of Dr. Nash that she herself had prepared two ver-

sions of her report, intending that the redacted version be used for insurance purposes, and the affidavit of the manager of the store where the duplicate photograph was prepared, explaining how accidental cropping can occur. Significantly, the affidavit of plaintiff's attorney also pointed out that counsel for BFI had seen and used the original, uncropped photograph in questioning approximately eight deposition witnesses.

Because the court had given both plaintiff and BFI a "clean slate" in the March 13, 1998 order, it could not properly consider further discovery sanctions against plaintiff absent further discovery defaults by her. Defendants contend that plaintiff violated the March 13, 1998 order by her initial refusal to produce authorizations to obtain the records of a doctor who treated plaintiff for an eye injury, plaintiff's family doctor, and plaintiff's OB/GYN doctor. Plaintiff was not, however, required to produce those authorizations by that order. Rather, the order directed production of only those authorizations sought by defendants as of March 27, 1998. All of the authorizations ordered to be produced by the Referee after that date were demanded subsequent to and separately from that list.

The only other alleged discovery default by plaintiff occurring after March 13, 1998 is her failure to produce all "x-rays, C-T scans, and other films, records or materials" at the medical examination as demanded. We note that neither CPLR 3121 (a) nor Uniform Rules for Trial Courts (22 NYCRR) § 202.17 authorizes such a demand. Rather, CPLR 3121 (a) provides that the examination notice "may require duly executed and acknowledged written authorizations permitting all parties to obtain" the hospital records of a party whose mental or physical condition is in controversy, and section 202.17 (b) requires that the party seeking recovery serve on all other parties, at least 20 days prior to the scheduled examination date, "(1) copies of the medical reports of those medical providers who have previously treated or examined the party seeking recovery * * * [and] (2) * * * authorizations permitting all parties to obtain * * * hospital records and such other records, including x-ray and technicians' reports, as may be referred to and identified in the reports of those medical providers who have treated or examined the party seeking recovery." Here, plaintiff had already furnished all required medical authorizations prior to the notice seeking the examination. Further, plaintiff cannot be faulted for the belated production of some of her records by ECMC. Even assuming, arguendo, that plaintiff committed a discovery violation by failing to bring the demanded records with her to the examination, we conclude that such a violation

was not sufficiently material or prejudicial to support the imposition of a sanction. BFI either already had in its possession or subsequently obtained all of plaintiff's medical and hospital records, including those of ECMC (*see Connors v Sowa*, 251 AD2d 989 [1998]; *Proia v Ciszewski*, 231 AD2d 871 [1996]).

The sole remaining contention of defendants in support of affirmance of the order in appeal No. 1 is that they have been "irremediably" prejudiced by their belated receipt of the 1983 and 1985 ECMC records, and by the failure of plaintiff to disclose that she was in three additional car accidents. We disagree. The affidavit submitted by plaintiff in opposition to defendants' motions to dismiss the complaint raises issues of fact whether she was in any prior accidents other than those in 1977 and 1989, which she had previously disclosed. Those issues of fact cannot be resolved on the motion papers before us, but must be resolved at trial. We therefore modify the order in appeal No. 1 by denying defendants' motions and reinstating the complaint. Present—Pine, J.P., Hurlbutt, Scudder, Kehoe and Hayes, JJ.