Penfield Place, LLC v Dwyer Architectural, LLC (2024 NY Slip Op 50495(U))

[*1]

Penfield Place, LLC v Dwyer Architectural, LLC

2024 NY Slip Op 50495(U)

Decided on April 25, 2024

Supreme Court, Monroe County

Doyle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 25, 2024
Supreme Court, Monroe County

Penfield Place, LLC, and PENFIELD PLACE PROPERTIES, LLC, Plaintiff,

against
Dwyer Architectural, LLC, TOWN OF PENFIELD, TOWN OF PENFIELD PLANNING BOARD, TOWN OF PENFIELD FIRE MARSHAL DEPARTMENT, TOWN OF PENFIELD ZONING BOARD OF APPEALS, TOWN OF PENFIELD BUILDING AND ZONING DEPARTMENT, and TOWN OF PENFIELD ENGINEERING DEPARTMENT, Defendants.

Index No. E2019003695

Langston D. McFadden, Esq., and Mallory K. Smith, Esq., Pullano & Farrow PLLC, for the Plaintiffs 
Matthew Gumaer, Esq., GOLDBERG SEGALLA LLP, for Defendant Dwyer Architectural, LLC 
Andrew J. Schwab, Esq., SCHWAB & GASPARINI, PLLC, for Defendants Town of Penfield et al.

Daniel J. Doyle, J.

Plaintiffs Penfield Place, LLC and Penfield Place Properties, LLC (hereinafter "plaintiffs") initiated this action alleging professional malpractice and breach of contract as to defendant Dwyer Architectural, LLC (hereinafter "Dwyer") and negligence actions against the Town of Penfield defendants (hereinafter "Penfield") relating to the construction of a single-story addition to plaintiffs' skilled nursing facility in the Town of Penfield. The gravamen of all causes of action are that the defendants either recommended (Dwyer), or approved of (Penfield), the use of non-fire-retardant wood trusses contrary to building codes, which resulted in the [*2]denial of a certificate of occupancy until remedial measures were undertaken at significant cost to the plaintiff.
Dwyer answered the complaint and asserted a cross-claim against the Penfield defendants seeking contribution under CPLR Article 14. The gravamen of the cross-claim is that Harold Morehouse, the former Penfield building inspector, advised Dwyer that the project did not need to use fire-retardant wood trusses. Dwyer alleged that this advice created a special relationship between Penfield and Dwyer. Dwyer also alleged that Penfield failed to properly review the plans and specifications, and during inspections of the project failed to determine if the relevant wood trusses were code compliant.
Penfield answered the complaint. Relevant herein, Penfield asserted an affirmative defense that it was entitled to various governmental immunities, including the governmental function immunity. Penfield also raised as an affirmative defense that the issuance of a certificate of occupancy and building permits, and approval of site plans are discretionary government functions entitled to immunity. Finally, Penfield raised as an affirmative defense the lack of a special relationship between Penfield and the plaintiffs.
In an Order dated November 15, 2023 the Court, upon consent of the plaintiffs, dismissed the plaintiffs' causes of action against the Penfield defendants.
The Penfield defendants now move for summary judgment dismissing the cross-claim asserted by Dwyer. Dwyer cross-moves to compel discovery responses from the plaintiff. For the reasons set forth below, the Penfield's motion for summary judgment is GRANTED, and the cross-claim for contribution is dismissed. Dwyer's motion to compel is partially GRANTED.
Motion for Summary Judgment Standard
A party seeking summary judgment pursuant to CPLR 3212 must make prima facie showing of entitlement to judgment as a matter of law and submit sufficient evidence to demonstrate the absence of any material issue of fact. (Iselin & Co. Inc v Landau, 71 NY2d 420 [1988].) Summary judgment may only be granted when "it has been clearly ascertained that there is no triable issue of fact outstanding; issue finding, rather than issue determination, is its function". (Suffolk County Dep't of Soc. Servs. v James M., 83 NY2d 178, 182 [1994].) Only when the proponent demonstrates entitlement to summary judgment, the opposing party must then demonstrate, generally by admissible evidence, the existence of an issue of fact requiring a trial. (Zuckerman v City of New York, 49 NY2d 851 [1985].)
Relevant Facts
The plaintiffs contracted with Dwyer to design a single-story addition to a nursing home facility owned by the plaintiffs in the Town of Penfield. In 2015 the building codes were changed requiring that wood trusses be fire retardant. However, Dwyer developed construction plans that did not require the code-compliant trusses. Dwyer admits that this was incorrect.
Dwyer (and the plaintiff) allege that a Penfield employee, Harold Morehouse- the Town's building inspector- provided erroneous advice on the interpretation of the building codes relevant to the use of wood trusses. Specifically, Dwyer attaches the affidavit of James J. [*3]Woodcock, an employee of Dwyer, that avers (emphasis supplied):
6. * * * I reviewed the relevant codes myself and consulted internally with Kim Dwyer to seek her opinion regarding whether the requirement could be eliminated.
7. After Dwyer internally tentatively concluded that the fire retardant treatment could be eliminated, I telephoned the Town of Penfield building inspector, Harold Morehouse to discuss the issue. I spoke with Mr. Morehouse by telephone on or about February 8, 2017.
8. Mr. Morehouse confirmed that he concurred with our interpretation that fire retardant treatment could be eliminated from the roof trusses and sheathing.
9. Having confirmed the Town's interpretation of the requirement was consistent with our own, our office issued Addendum number 3 dated March 30, 2017, which, among other things, indicated that "trusses and roof sheathing are not required to be fire-treated" * * *
10. Thereafter, Dwyer issued construction drawings which I stamped dated April 20, 2018 and the Town issued a building permit, allowing work to proceed in accordance with those plans * * *.
11. Although the Town conducted a number of interim inspections during the course of the Project, the Town did not advise that it had changed its interpretation of the requirement for fire-treatment until near the conclusion of the project. Had the Town advised of its changed interpretation earlier, either before construction began, or when the trusses and sheathing were initially installed, I believe the issue would have been far easier and less expensive to resolve.[FN1]
Thereafter, Dwyer submitted construction plans to the Town for approval that did not require fire-retardant wood trusses. Penfield approved the plans. Construction began and non-fire-retardant wood trusses were used. Penfield's code compliance officer inspected the construction project several times but did not identify any deficiencies in the wood trusses that were used.
Penfield denied the project a certificate of occupancy, resulting in additional remedial requirements to obtain the certificate at substantial cost to the plaintiffs.
Summary Judgment is Granted as to the Cross-Claim
The salient question herein is whether providing an incorrect interpretation of the relevant building codes by Penfield, and failing to find non-code compliant trusses during physical inspections of the project by Penfield, can be the basis of liability sufficient for Dwyer, as a tortfeasor liable to the plaintiffs, to seek contribution from Penfield under CPLR § 1401.
Penfield claims that the cross-claim for contribution must be dismissed as: (1) the plaintiffs' claims against Penfield were dismissed and thus there cannot be a claim for contribution by Dwyer; and (2) Dwyer has failed to establish the existence of a special duty, and even if it had, the governmental function immunity defense would apply.
As to the first claim, the Court rejects the argument that as the plaintiffs consented to dismissal of their causes of action against Penfield that Dwyer cannot now seek contribution from Penfield under CPLR article 14. "A contribution claim can be made even when the contributor has no duty to the injured plaintiff (Sommer v Federal Signal Corp., 79 NY2d 540, 559; Garrett v Holiday Inns, 58 NY2d 253, 261). In such situations, a claim of contribution may be asserted if there has been a breach of a duty that runs from the contributor to the defendant who has been held liable (see, Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 568, n 5; Garrett v Holiday Inns, supra, at 261; Nolechek v Gesuale, 46 NY2d 332; see also, Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 71 NY2d 599)." (Raquet v. Braun, 90 NY2d 177, 182—83 [1997].) If Penfield breached a legal duty owed to Dwyer, Dwyer could seek contribution for any amounts determined to be owed to the plaintiff.
However, the Court finds that as Penfield has established that there was no special duty between Penfield and Dwyer, and that even if there were, Penfield's actions as to Dwyer were immune from liability, there cannot be any contribution. Thus, the cross-claim must be dismissed.
In determining claims of municipal liability, a court must first determine if "the municipality was engaged in a proprietary function or acted in a governmental capacity (see Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; Preaster v City of Syracuse, 160 AD3d 1423, 1423 [4th Dept 2018], lv denied 32 NY3d 902 [2018])." (Maldovan v. Cnty. of Erie, 188 AD3d 1597, 1598 [4th Dept. 2020], aff'd, 39 NY3d 1166 [2022].) Here, there is no question that the acts alleged to have been committed by Penfield were done while Penfield was acting in a governmental capacity. ". . .[A] municipality will be deemed to have been engaged in a governmental function when its acts are undertaken for the protection and safety of the public pursuant to the general police powers" (Applewhite, 21 NY3d at 425, 972 N.Y.S.2d 169, 995 N.E.2d 131 [internal quotation marks omitted])." (Preaster v. City of Syracuse, 160 AD3d 1423, 1423 [4th Dept. 2018].) The issuance of building permits, certificates of occupancy, and certifying compliance with fire safety codes are unquestionably governmental functions. (See Applewhite v. Accuhealth, Inc., 21 NY3d 420, 426 [2013]: "Police and fire protection are examples of long-recognized, quintessential governmental functions (citations omitted).Additional examples include . . . issuance of building permits or certificates of occupancy (see Rottkamp v. Young, 15 NY2d 831, 833, 257 N.Y.S.2d 944, 205 N.E.2d 866 [1965], affg. 21 AD2d 373, 249 N.Y.S.2d 330 [2d Dept.1964]; Worth Distribs. v. Latham, 59 NY2d 231, 237, 464 N.Y.S.2d 435, 451 N.E.2d 193 [1983]); certifying compliance with fire safety codes (see Garrett v. Holiday Inns, 58 NY2d 253, 261—262, 460 N.Y.S.2d 774, 447 N.E.2d 717 [1983]); . . [*4].")
Because Penfield was acting in a governmental capacity, it may only be found to owe a duty to Dwyer if there existed a "special duty" between Penfield and Dwyer.
In Ferreira v. City of Binghamton (38 NY3d 298 [2022]) the Court of Appeals clarified whether the special duty rule applied to cases in which the injury was caused directly by the negligence of the municipality or its agents (as opposed to only in cases where there was a "failure to protect the plaintiff from an injury inflicted other than by a municipal employee"). (Ferreira v. City of Binghamton, 38 NY3d at 304.) The Court of Appeals held that in cases wherein the municipality was acting in a governmental capacity "if the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action" (Connolly, 30 NY3d at 727, citing Lauer, 95 NY2d 95)." (Id. at 308.).
A "special duty can arise in three situations: (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition" (Applewhite, 21 NY3d at 426)." (Id. at 310.) Dwyer claims the second situation exists here, namely that Penfield voluntarily assumed a duty to provide proper advice.
The test for whether a municipal entity assumed a duty owed to another consists of the following four factors: "'(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking' " (Laratro, 8 NY3d at 83, 828 N.Y.S.2d 280, 861 N.E.2d 95, quoting Cuffy v. City of New York, 69 NY2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937 [1987] )." (Applewhite v. Accuhealth, Inc., 21 NY3d 420, 430—31 [2013].) "'[A]ll four elements must be present for a special duty to attach'" (Maldovan, 39 NY3d at 172, 184 N.Y.S.3d 673, 205 N.E.3d 393, quoting Tara N.P. v. Western Suffolk Bd. of Coop. Educ. Servs., 28 NY3d 709, 715, 49 N.Y.S.3d 362, 71 N.E.3d 950 [2017])." (Weisbrod-Moore v. Cayuga Cnty., 216 AD3d 1459 [4th Dept. 2023].)
In reviewing the evidence in the light most favorable to Dwyer, the Court concludes that no special duty existed between Penfield and Dwyer.
As to the claim that Penfield breached a duty to Dwyer in failing to notice the lack of fire-retardant wood trusses during inspections, or in reviewing the proposed building plans, "[i]t has long been the law of New York that "the mere failure to uncover fire and safety violations during inspection clearly would not constitute a sufficient predicate for imposing liability" (Garrett v Holiday Inns, supra, p 262; see, also, O'Connor v City of New York, 58 NY2d 184; Sanchez v Village of Liberty, 42 NY2d 876). Defendant's failure to check the information given to it by the applicant is analogous to a failure to inspect the premises properly for code violations and creates no liability absent a special relationship or detrimental reliance (see Garrett v Holiday Inns, supra, p 262, n 4; see, also, Gordon v Holt, 65 AD2d 344; Sexstone v City of [*5]Rochester, 32 AD2d 737)." (Rolfe v. Vill. of Falconer, 96 AD2d 1142, 1142—43, [4th Dept. 1983], aff'd, 62 NY2d 884 [1984]; see also Sanchez v. Vill. of Liberty, 42 NY2d 876 [1977].)
The advice provided by a Penfield employee that the code allowed non-fire retardant wood trusses does not establish a special duty between Penfield and Dwyer. First, the statements by Morehouse- that he concurred with Dwyer's interpretation of the building codes — did not create an assumption by Penfield of an affirmative duty to act on behalf of Dwyer. Morehouse's statements did not affirmatively create an assumed duty by Penfield to ensure that the plans prepared and submitted by Dwyer were code-compliant. (See gen. McLean v. City of New York, 12 NY3d 194 [2009]; Pelaez v. Seide, 2 NY3d 186 [2004].) Unlike the situation in Weese v. Village of Medina (83 AD2d 989 [4th Dept. 1981]), cited by Dwyer, the fire codes are not peculiarly within the knowledge of Penfield and its employees. ("There is another reason that no special relationship exists to support plaintiffs' claim against the Village. Both plaintiffs and Stratford were on notice of the Village ordinances and applicable laws that prohibited building within the floodplain. Both plaintiffs and Stratford possessed the ability to determine whether the structure complied with the applicable ordinances but chose not to do so. Where good-faith inquiry would have ascertained that the ordinance precluded the use of the property for building purposes, there can be no estoppel or liability for damages (see, Matter of Parkview Assocs. v. City of New York, 71 NY2d 274, 282, 525 N.Y.S.2d 176, 519 N.E.2d 1372, cert. denied 488 U.S. 801, 109 S.Ct. 30, 102 L.Ed.2d 9; Matter of Federowicz v. Town Bd. of Cheektowaga, 143 AD2d 519, 533 N.Y.S.2d 159)." (Okie v. Vill. of Hamburg, 196 AD2d 228, 233 [4th Dept. 1994]; see also Barski v. Town of Aurelius, 192 AD3d 1573 [4th Dept. 2021].)
Additionally, Penfield has established — and Dwyer has not created an issue of fact — that Dwyer did not justifiably rely upon Morehouse's statements. "We have previously emphasized the importance of this factor, describing it as "critical" because it "provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury" (id. at 261, 513 N.Y.S.2d 372, 505 N.E.2d 937). Where timely contested by the defense, the issue of whether a plaintiff offered sufficient evidence to establish a special relationship is a question of law for the court to resolve (id. at 263, 513 N.Y.S.2d 372, 505 N.E.2d 937 [finding "as a matter of law" that plaintiffs' injuries were not the result of justifiable reliance on assurances of police protection])." (Valdez v. City of New York, 18 NY3d 69, 81 [2011], FN omitted.)
According to Dwyer's factual submissions, Dwyer had already determined the fire-retardant wood trusses would not be needed. At best, Morehouse only concurred in Dwyer's erroneous interpretation. (Okie v. Vill. of Hamburg, supra.) Morehouse's statements did not "lull[] [Dwyer] into a false sense of security" (Cuffy v. City of New York, 69 NY2d 255, 261 [1987]) as Dwyer proceeded as it had previously intended, to recommend construction plans that did not use fire-retardant wood trusses.
Assuming, arguendo, that Penfield failed to establish no special duty existed, or that Dwyer has created an issue of fact regarding same, summary judgment must be granted dismissing the cross-claim as Penfield has established it is subject to the governmental immunity defense. As the Court of Appeals noted in Ferreira:
The governmental function immunity defense "provides immunity for the exercise of discretionary authority during the performance of a governmental function" (Turturro, 28 [*6]NY3d at 479). Thus, "even if a plaintiff establishes all elements of a negligence claim, a state or municipal defendant engaging in a governmental function can avoid liability if it timely raises the defense and proves that the alleged negligent act or omission involved the exercise of discretionary authority" (Valdez, 18 NY3d at 76; see Haddock, 75 NY2d at 484). The "defense cannot attach," however, "unless the municipal defendant establishes that the discretion possessed by its employees was in fact exercised in relation to the conduct on which liability is predicated" (Valdez, 18 NY3d at 76; see McLean v City of New York, 12 NY3d 194, 203 [2009]). As we have previously clarified, when both the special duty requirement and the governmental function immunity defense are asserted in a negligence case, "the rule that emerges is that '[g]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general' " (Valdez, 18 NY3d at 76-77, quoting McLean, 12 NY3d at 203).
(Ferreira v. City of Binghamton, 38 NY3d at 311—12.)
"A public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality's liability even when the conduct is negligent." (Lauer v. City of New York, 95 NY2d 95, 99 [2000].)
As Mr. Woodcock's averments establish, Morehouse was offering an interpretation of the fire codes.[FN2]
As such, it necessarily required Morehouse to exercise discretion and judgment. Thus, Morehouse's statements would be subject to the governmental function immunity defense. (See Maldovan v. Cnty. of Erie, 188 AD3d at 1600; Valdez v. City of New York, 18 NY3d at 79: "[t]he defense precludes liability for a "mere error of judgment" (see Haddock, 75 NY2d at 485, 554 N.Y.S.2d 439, 553 N.E.2d 987)"; Middleton v. Town of Salina, 108 AD3d 1052 [4th Dept. 2013].)
Thus, the cross-claim for contribution is dismissed.
The Motion to Compel is Partially Granted
Dwyer moves to compel discovery responses from the plaintiffs related to the plaintiffs' delayed occupancy of the new addition damages claim. Plaintiffs conceded that they cannot "isolate those costs associated with operating the addition as no such documentation exists" or [*7]the revenue generated by the new addition.[FN3]

"It is well settled that '[t]rial courts have broad discretion in supervising disclosure and, absent a clear abuse of that discretion, a trial court's exercise of such authority should not be disturbed' " (Carpenter v. Browning-Ferris Indus., 307 AD2d 713, 715, 763 N.Y.S.2d 871 [4th Dept. 2003]; see Allen v. Wal-Mart Stores, Inc., 121 AD3d 1512, 1513, 993 N.Y.S.2d 820 [4th Dept. 2014])." (Prattico v. City of Rochester, 197 AD3d 882, 883 [4th Dept. 2021].)
The CPLR provides for "full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (CPLR 3101 [a]). "New York discovery rules do not condition a party's receipt of disclosure on a showing that the items the party seeks actually exist; rather, the request need only be appropriately tailored and reasonably calculated to yield relevant information. Indeed, as the name suggests, the purpose of discovery is to determine if material relevant to a claim or defense exists." (Forman v. Henkin, 30 NY3d 656, 664 [2018].) "Indeed, "[i]f there is any possibility that the information is sought in good faith for possible use as evidence-in-chief or for cross-examination or in rebuttal, it should be considered [matter] material in the action" (Vargas v. Lee, 170 AD3d 1073, 1075, 96 N.Y.S.3d 587 [2d Dept. 2019] [emphasis added and internal quotation marks omitted])." (Tousant v. Aragona, 208 AD3d 1044, 1046 [4th Dept. 2022].)
In exercising its discretion, the Court determines that the following documents shall be produced by the plaintiffs: (1) all information regarding any lease or leases between the two named plaintiffs; (2) any documents submitted by the plaintiff to any entity seeking to increase the plaintiffs' approved Medicaid rate based on the funds expended to construct the addition at issue in this case; (3) any documents concerning claims made by plaintiffs against Hamilton Stern alleging that the construction work was deficient, defective or delayed; (4) contracts or agreements between the plaintiffs and any other entities owned by Robert Hurlbut relating to the operation of plaintiffs' facility between the years 2018 and 2022; and (5) unredacted financial statements for the years 2017 and 2018.
All documents shall be disclosed by the plaintiffs by May 31, 2024.
Based upon the foregoing, and the papers filed herein,[FN4]
it is hereby
ORDERED that Penfield's motion to dismiss the cross-claim made by Dwyer is GRANTED and the cross-claim asserted by Dwyer against Penfield is dismissed pursuant to CPLR § 3212; and it is further
ORDERED that Dwyer's motion to compel is partially granted as set forth in this Decision, Order, and Judgment; and it is further
ORDERED that the plaintiffs shall produce all remaining discovery as ordered herein by May 31, 2024; and it is further
ORDERED that a Note of Issue and Statement of Readiness shall be filed no later than June 28, 2024.
Dated: April 25, 2024

Footnotes

Footnote 1:Penfield disputes whether Morehouse (or another employee) made these statements. However, as set forth below, in the light most favorable to the non-moving party, these facts will be assumed to be true. (""When reviewing a motion for summary judgment the focus of the court's concern is issue finding, not issue determination, and the affidavits should be scrutinized carefully in the light most favorable to the party opposing the motion". (Goldstein v County of Monroe, 77 AD2d 232, 236; Renda v Frazer, 75 AD2d 490.)" Robinson v. Strong Mem'l Hosp., 98 AD2d 976, 976 [4th Dept. 1983].)

Footnote 2:Defendant Dwyer's managing partner, Kimberly Dwyer, referred to their conclusions regarding whether fire-retardant wood trusses would be necessary as an "opinion" and that Mr. Woodcock approached Penfield "for a second opinion". (Deposition of Kimberly A. Dwyer [NYSCEF Docket # 199] at page 34.) Ms. Dwyer also testified that the first "determination" was that the trusses were required to be fire-retardant, but they changed their determination after consulting with their contractor. (Id. at pages 41-42.) Finally, Ms. Dwyer testified that Dwyer "misinterpreted" the code regarding the trusses. (Id. at page 46-47.) This is further evidence that the determination of whether the trusses were required to be fire-retardant required an exercise of judgment.

Footnote 3:Plaintiffs also assert that they have provided "sufficient" documentation to allow Dwyer to assess the plaintiffs' damages claim. However, the standard is not sufficiency of the production; instead, the CPLR mandates the production of all information that is relevant and material, or that may identify relevant and material evidence. As the plaintiffs concede that they do not have financial records which specifically delineate the costs of operating the new addition and the revenue from the new addition, broad discovery on the plaintiffs' operating costs and revenue in the facility should be allowed.

Footnote 4:Notice of Motion (NYSCEF Docket # 188); Affirmation in Support with Exhibits (NYSCEF Docket #s 189-206); Memorandum of Law in Support (NYSCEF Docket # 207); Notice of Cross-Motion (NYSCEF Docket # 209); Affirmation in Support of Cross-Motion with exibits (NYSCEF Docket #s 210-226); Memorandum of Law in Opposition to Motion and in Support of Cross-Motion (NYSCEF Docket # 227); Affirmation in Reply (NYSCEF Docket # 230). The Reply Affirmation and Affidavit with exhibits (NYSCEF Docket #s 232 and 233) were not considered by the Court as they were filed in violation of the Court's briefing schedule and CPLR § 2214.