LG 70 Doe v Town of Amherst (2024 NY Slip Op 02651)

LG 70 Doe v Town of Amherst

2024 NY Slip Op 02651

Decided on May 10, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 10, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, BANNISTER, OGDEN, AND DELCONTE, JJ.

966 CA 22-01514

[*1]LG 70 DOE, PLAINTIFF-RESPONDENT,
v
TOWN OF AMHERST, DEFENDANT-APPELLANT, TOWN OF AMHERST POLICE DEPARTMENT, ET AL., DEFENDANTS. 

WEBSTER SZANYI LLP, BUFFALO (SHANNON B. O'NEILL OF COUNSEL), FOR DEFENDANT-APPELLANT. 
LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOHN A. COLLINS OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Deborah A. Chimes, J.), entered July 22, 2022. The order, insofar as appealed from, denied those parts of the motion of defendants Town of Amherst and Town of Amherst Police Department seeking to dismiss the 7th and 10th causes of action against defendant Town of Amherst. 
It is hereby ORDERED that the order insofar as appealed from is reversed on the law without costs, the motion is granted in its entirety, and the 7th and 10th causes of action are dismissed against defendant Town of Amherst.
Memorandum: Plaintiff commenced this personal injury action pursuant to the Child Victims Act (see CPLR 214-g) alleging that he was repeatedly sexually assaulted between 1977 and 1981 by his former youth baseball coach (coach), who was employed at that time as a police officer by defendant Town of Amherst (Town). The Town and defendant Town of Amherst Police Department (Police Department) moved to, inter alia, dismiss all causes of action against the Police Department and dismiss several causes of action against the Town. The Town now appeals from an order that, inter alia, denied the motion insofar as it sought to dismiss plaintiff's 7th and 10th causes of action against the Town.
We agree with the Town that Supreme Court erred in denying that part of the motion seeking dismissal against it of plaintiff's seventh cause of action, alleging that the Town negligently supervised plaintiff, thereby resulting in his injuries. Where, as here, a "negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; see Ferreira v City of Binghamton, 38 NY3d 298, 308 [2022]). "If the municipality's actions fall in the proprietary realm, it is subject to suit under the ordinary rules of negligence applicable to nongovernmental parties" (Applewhite, 21 NY3d at 425). Where, however, "the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action" (Connolly v Long Is. Power Auth., 30 NY3d 719, 727 [2018]; see Ferreira, 38 NY3d at 308). Here, plaintiff's seventh cause of action is premised on the Town's exercise of a governmental function—specifically, its general duty to provide police protection—and, as such, plaintiff was required to plead that the Town owed him a special duty of care (see Howell v City of New York, 39 NY3d 1006, 1008 [2022]; Ruiz v City of Buffalo, 100 AD3d 1388, 1388-1389 [4th Dept 2012]). Plaintiff failed to do so here.
A special duty can arise in three ways, namely: " '(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when [the municipality] voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the [*2]duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation' " (Weisbrod-Moore v Cayuga County, 216 AD3d 1459, 1460 [4th Dept 2023]). Although plaintiff asserts that the Town voluntarily assumed a duty to supervise him under the second category, to establish voluntary assumption a plaintiff must plead: " '(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking' " (Ferreira, 38 NY3d at 312-313). Here, the complaint does not allege a promise or other affirmative action by the Town assuming a duty to act on behalf of plaintiff specifically, nor does it allege that plaintiff relied upon such an assumption. The court therefore erred in denying that part of the motion seeking dismissal of plaintiff's seventh cause of action against the Town (see Ruiz, 100 AD3d at 1389; Wood v Nigro, 81 AD3d 1453, 1454 [4th Dept 2011]).
We also agree with the Town that the court erred in denying that part of the motion seeking dismissal against it of plaintiff's 10th cause of action, alleging a failure to report under Social Services Law former § 413 and Social Services Law § 420. Social Services Law § 420 imposes, as relevant here, civil penalties on "[a]ny person, official or institution required by this title to report a case of suspected child abuse or maltreatment[, such as a police officer or other law enforcement official,] who knowingly and willfully fails to do so" (Social Services Law § 420 [2]; see former § 413).
In a decision released while this appeal was pending, we concluded, as other Departments of the Appellate Division had previously, that there is no statutory duty to report child abuse where the alleged abuser is neither a parent nor another person legally responsible for the abused child's care (Solly v Pioneer Cent. Sch. Dist., 221 AD3d 1447, 1449 [4th Dept 2023]; see Dolgas v Wales, 215 AD3d 51, 59 [3d Dept 2023], lv denied 41 NY3d 904 [2024]; Hanson v Hicksville Union Free Sch. Dist., 209 AD3d 629, 631 [2d Dept 2022]; see generally Matter of Catherine G. v County of Essex, 3 NY3d 175, 180 [2004]). In reaching that conclusion, we explained that the Social Services Law incorporated the definition of "abused child" found in the Family Court Act (see Social Services Law former § 412 [1]), which in turn defined that term, as relevant there, as "a child harmed by a 'parent or other person legally responsible for [the child's] care' " (Solly, 221 AD3d at 1449, quoting Family Ct Act former § 1012 [e]). The Family Court Act definition of an "abused child" does not encompass abuse by "persons who assume fleeting or temporary care of a child such as . . . those persons who provide extended daily care of children in institutional settings, such as teachers" (Matter of Yolanda D., 88 NY2d 790, 796 [1996]; see Solly, 221 AD3d at 1449), on the premise that the State need not intervene in such situations inasmuch as "[p]arents would usually be the ones to take action" (Catherine G., 3 NY3d at 180).
Plaintiff does not dispute that, as the Town contends, the coach who is alleged to have sexually assaulted him was not a person legally responsible for his care. Plaintiff responds, however, that the 10th cause of action should nonetheless not be dismissed against the Town inasmuch as the allegations in the complaint may be construed as alleging that the coach had intentionally inflicted "serious physical injury" on him and, thus, plaintiff fell under the definition of a "maltreated child" under Social Services Law former § 412 (2) (b), as opposed to an "abused child" under former section 412 (1), thus triggering the duty to report under former section 413. A maltreated child is defined in former section 412 (2) (b), as well as the current version, as a child "who has had serious physical injury inflicted upon [them] by other than accidental means," without any reference to the relationship that the child has to the person suspected of inflicting the injury. Plaintiff argues that the child protective services provisions under Social Services Law article 6, title 6, should therefore be interpreted to mandate reporting every time an individual intentionally inflicts serious physical injury upon a child, regardless of the individual's relationship to the child. The Town, in contrast, argues that the protective provisions for maltreated children who have been seriously injured should be interpreted, as we concluded with respect to the provisions for abused children in Solly (221 AD3d at 1449), to mandate reporting only where the individual who is suspected to have intentionally inflicted the serious physical injury on the child is a parent or other legally responsible person. We agree with plaintiff's interpretation.
It is fundamental that "[e]ffect and meaning must, if possible, be given to the entire [*3]statute and every part and word thereof" (People v Talluto, 39 NY3d 306, 311 [2022] [internal quotation marks omitted]). The Town's proffered interpretation of the applicable child protective provisions imposes a relationship requirement on the definition of, and duty to report suspected, maltreatment caused by the intentional infliction of serious physical injury that would, if adopted, nullify the plain and unambiguous textual distinction between that category of maltreatment and abuse (see Social Services Law §§ 412, 413; see generally Talluto, 39 NY3d at 310) and, further, subsume the definition of "maltreated child" under Social Services Law § 412 (2) (b) into the definition of "abused child" under section 412 (1), rendering the former and current versions of section 412 (2) (b) superfluous (see generally Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]). While the " '[s]ubject of [a] report' " of suspected child abuse or maltreatment under former section 412 (4) was defined as the subject child and the "parent, guardian or other person legally responsible" for the subject child, unlike with an abused child there was, and is, no statutory requirement that the serious physical injury suffered by a maltreated child had to have been intentionally inflicted by the child's parent, guardian or other legally responsible person in order for the conduct to fall within the ambit of child protective services (cf. Solly, 221 AD3d at 1449; see generally Social Services Law former § 412 [4]; Matter of Adalisa R. v New York State Off. of Children & Family Servs., 190 AD3d 436, 437 [1st Dept 2021]). Thus, we conclude that Social Services Law former § 413 mandated, as the current version mandates, the reporting of every instance of suspected intentionally inflicted serious physical injury upon a child, regardless of who is suspected to have inflicted it, thereby triggering an investigation of the child's parent or other legally responsible person—as a "subject of the report"—to determine whether, inter alia, that person inflicted or allowed the harm to be inflicted upon the child. "[T]he purpose of [the child protective services provisions under Social Services Law article 6, title 6, is] to encourage more complete reporting of suspected child abuse and maltreatment," not less (Social Services Law § 411), and the former and current versions of sections 412 (2) (b) and 413 apply equally to children who have had a serious physical injury intentionally inflicted by, inter alia, a coach, a classroom teacher, a neighbor, another child or a distant relative who is not legally responsible for the child's care.
Nonetheless, we ultimately agree with the Town that the court erred in failing to dismiss the 10th cause of action against it. Although this Court "must accept the facts as alleged in the complaint as true, accord plaintiff[ ] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable theory" (BL Doe 3 v Female Academy of the Sacred Heart, 199 AD3d 1419, 1420 [4th Dept 2021] [internal quotation marks omitted]), "conclusory allegations—claims consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss" (Easterbrooks v Schenectady County, 218 AD3d 969, 970 [3d Dept 2023] [internal quotation marks omitted]; cf. BL Doe 3, 199 AD3d at 1423). Inasmuch as the complaint here does not contain a specific allegation that the Town received information that its employee—plaintiff's youth baseball coach—was sexually assaulting plaintiff, the 10th cause of action against the Town necessarily "consist[s] of 'bare legal conclusions without factual support [that] are insufficient to withstand a motion to dismiss' " (BL Doe 5 v Fleming, 199 AD3d 1426, 1428 [4th Dept 2021]; see Hanson, 209 AD3d at 631; cf. J.K. v City of New York, 223 AD3d 565, 566 [1st Dept 2024]).
In light of our determination, the Town's remaining contentions are academic.
All concur except Whalen, P.J., and Lindley, J., who concur in the result in the following memorandum: We concur with the majority that Supreme Court erred in denying that part of the motion of defendant Town of Amherst (Town) and defendant Town of Amherst Police Department that sought dismissal of plaintiff's 7th cause of action against the Town, alleging that the Town negligently supervised plaintiff, and erred in denying that part of the motion seeking dismissal of plaintiff's 10th cause of action against the Town, alleging a failure to report under Social Services Law former § 413 and Social Services Law § 420. We write separately only to express our disagreement with the conclusion of the majority that, with respect to the 10th cause of action, a mandated reporter is statutorily required to report any person who inflicted serious physical injury upon a child regardless of whether there is a parental or guardianship relationship, even where that same mandated reporter would not be required to report conduct constituting abuse.
Social Services Law § 420 imposes, as relevant here, civil penalties on "[a]ny person, official or institution required by this title to report a case of suspected child abuse or [*4]maltreatment[, such as a police officer or other law enforcement official,] who knowingly and willfully fails to do so" (Social Services Law § 420 [2]; see former § 413). As the majority acknowledges, we released a decision while this appeal was pending in which we concluded, as other Departments of the Appellate Division had previously, that there is no statutory duty to report child abuse where the alleged abuser is neither a parent nor a person legally responsible for the child's care (Solly v Pioneer Cent. Sch. Dist., 221 AD3d 1447, 1449 [4th Dept 2023]; see Dolgas v Wales, 215 AD3d 51, 59 [3d Dept 2023], lv denied 41 NY3d 904 [2024]; Hanson v Hicksville Union Free Sch. Dist., 209 AD3d 629, 631 [2d Dept 2022]). In response to the Town's appeal, plaintiff does not dispute that his alleged abuser—a youth baseball coach otherwise employed by the Town as a police officer—was not a person legally responsible for his care at the time the coach allegedly "sexual[ly] assault[ed] and/or abuse[d]" him. Plaintiff nonetheless seeks to avoid our conclusion in Solly, and the Town's reliance thereon, by reframing his statutory failure to report cause of action as one premised on maltreatment rather than abuse. We respectfully disagree with the conclusion of the majority that, but for plaintiff's failure to specifically allege that the Town received information that its employee was sexually assaulting plaintiff, plaintiff would have sufficiently stated a viable statutory failure to report cause of action.
Initially, Social Services Law article 6, title 6, viewed as a whole, "[p]lainly . . . contemplates intervention in relationships between children and their parents (or guardians or custodians)" (Matter of Catherine G. v County of Essex, 3 NY3d 175, 180 [2004]; see generally Matter of Town of Southampton v New York State Dept. of Envtl. Conservation, 39 NY3d 201, 209 [2023]). Social Services Law former § 412 (4) expressly limited the appropriate subject of any mandated report, including a maltreated child under Social Services Law former § 412 (2) (b), to the child and the child's "parent, guardian or other person legally responsible." Thus, even assuming, arguendo, that the sexual abuse and assault allegations in plaintiff's complaint may be appropriately construed as maltreatment and further assuming, arguendo, that a statutory failure to report cause of action premised separately and distinctly on allegations of maltreatment rather than abuse is revived by CPLR 214-g, we conclude that the coach still "could not be the subject of a report for purposes of Social Services Law former § 413, [and therefore the Town] was not required to report any suspected [maltreatment] by him" (Solly, 221 AD3d at 1449).
We respectfully disagree with the majority's conclusion that applying the plain language of Social Services Law former § 412 (4) to both abuse and maltreatment caused by the intentional infliction of serious physical injury would "nullify the plain and unambiguous textual distinction between that category of maltreatment and abuse" or "subsume the definition of 'maltreated child' under section 412 (2) (b) into the definition of 'abused child' under section 412 (1), rendering the former and current versions of section 412 (2) (b) superfluous." The distinction between an abused child and a maltreated one is not premised on the alleged perpetrator of the abuse or maltreatment. Instead, for the purpose of mandated reporting, an "abused child" is defined under the former and current versions of Social Services Law § 412 (1) by reference to the Family Court Act, which in turn limits reportable incidents of abuse involving physical injury to those acts or omissions which "cause[ ] or create[ ] a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ" (Family Ct Act § 1012 [e] [i]; see also § 1012 [e] [ii]). In contrast, Social Services Law § 412 (2) (b) defines a maltreated child, as relevant, as one "who has had serious physical injury inflicted upon [them] by other than accidental means" without reference to the Family Court Act or the heightened requirements found therein. So construed, that definition of maltreatment requires the reporting of a broader range of non-trivial, intentionally inflicted injuries that nonetheless fall short of the substantial risk of death, disfigurement, or impairment requirements of the Family Court Act's definition of abuse. Contrary to the majority's conclusion, it is that interpretation that gives "[e]ffect and meaning . . . to the entire statute and every part and word thereof" (People v Talluto, 39 NY3d 306, 311 [2022] [internal quotation marks omitted]), including the former and current versions of Social Services Law § 412 (4), and avoids requiring mandatory reporters "to furnish information to the state hotline [even when] the
reporters know the [perpetrator] cannot be the subject of a report" (Catherine G., 3 NY3d at 180).
Entered: May 10, 2024
Ann Dillon Flynn
Clerk of the Court